Mary O. CURTIS, Appellant,

v.

COMMISSION FOR LAWYER DISCIPLINE, Appellee.

No. 14–99–00749–CV.

Court of Appeals of Texas Houston (14th Dist.).

May 4, 2000.

Mary O'Keefe, Houston, for appellant.

Steve D. Statham, Linda Acevedo, Jennifer A. Hasley, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and EDELMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

The Commission for Lawyer Discipline ("Commission") brought this disciplinary action against Mary O. Curtis ("Curtis"), alleging violations of multiple provisions of the Texas Disciplinary Rules of Professional Conduct. Following a non-jury trial, the trial court suspended Curtis from the practice of law for one year, six months active and six months probated. On appeal to this Court, Curtis assigns ten interrelated issues for appellate review. She contends that (1) the trial court's judgment is not supported by clear and convincing evidence, (2) the trial court failed to specifically find that she acted in bad faith, (3) the attorney fees she charged were reasonable, (4) she did not practice under a misleading name by identifying herself with a name of a lawyer who was not a member of her firm or that she communicated such misleading name to clients, (5) she did not engage in any mis-

conduct, (6) the sanctions imposed against her were improper and an abuse of discretion, (7) the Commission breached its duty to her to provide protection from abuses of power in the disciplinary process, and (8) her trial counsel breached his fiduciary to her. We affirm.

## BACKGROUND

Joanne Chadderdon is an attorney licensed in the State of Texas. Chadderdon represented Jan Harrison and Tammy Sonnier in separate sexual harassment suits. Both clients executed contingency fee contracts with Chadderdon. Curtis is also an attorney licensed in the State of Texas. She maintained her office in the same building as Chadderdon. Curtis offered her assistance to Chadderdon in any of her pending cases. Chadderdon agreed to allow Curtis to assist her in the Harrison and Sonnier sexual harassment suits. Chadderdon introduced Curtis to Harrison and Sonnier and obtained their consents to allow Curtis to work on their cases.

Under Chadderdon's supervision, Curtis was to be responsible for drafting pleadings and contacting witnesses. Chadderdon remained solely responsible for all court appearances. Chadderdon and Curtis agreed to equally share expenses related to the two suits and to equally split any recovery.

Unbeknownst to Chadderdon, Curtis subsequently contacted Harrison and Sonnier and had them execute, respectively, a second contingency fee contract which provided for a contingency fee to Curtis and for Harrison to pay an additional $150 per hour to Curtis and for Sonnier to pay an additional $200 per hour to Curtis. According to the record, Curtis told Harrison and Sonnier that the Chadderdon authorized the second contract and that it was common for clients to execute multiple employment contracts. Curtis also told Harrison and Sonnier that Chadderdon was

seriously ill and would possibly be unable to perform her duties in their cases.

When Curtis relocated her law practice to another building, she took the files for Harrison and Sonnier. Harrison and Sonnier were then forced to choose between Curtis and Chadderdon whom they wanted to represent them. Following their respective discussions with Chadderdon, during which Chadderdon first learned of the second contracts and the false representations that she was seriously ill, Harrison and Sonnier contacted Curtis and informed her that they no longer desired her to represent them and asked her to return their files to Chadderdon. Curtis returned Sonnier's file, demanded payment of $4,100 from Chadderdon and payment of one-half of any contingency fee ultimately recovered. Likewise, Curtis returned Harrison's file, demanded payment of $23,000 from Chadderdon and payment of one-half of any contingency fee ultimately recovered.

Chadderdon responded by filing a grievance against Curtis with the State Bar of Texas. The Commission for Lawyer Discipline launched an investigation against Curtis and ultimately filed a disciplinary action against her. During her subsequent trial, Curtis's trial counsel and the Commission appeared. Curtis did not. Following the trial, the court entered judgment in favor of the Commission, suspending Curtis from the practice of law for a period of one year based upon multiple violations of the Texas Disciplinary Rules of Professional Conduct. The trial court also ordered Curtis to pay $7,087 to the Commission for attorney fees and $651.95 for court costs.

## DISCUSSION

In her first several issues presented for appellate review, Curtis contends that the evidence was legally and factually insufficient to support a finding that she violated any provision of the Texas Disciplinary Rules of Professional Conduct.[1]

1. In her brief, Curtis argues that the Commis- sion was required to prove its allegations

In reviewing the legal sufficiency of evidence to support a specific finding of fact, we consider all the evidence in the light most favorable to the finding and disregard all contrary evidence and inferences. *See Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 258 (Tex.App.-Houston [14th Dist.] 1999, no pet. h.). We will uphold the finding if there is more than a scintilla of evidence to support it. *See id.* If we determine the evidence is legally sufficient, we must then determine whether it is factually sufficient. *See id.* In doing so, we no longer consider the evidence in the light most favorable to the finding; instead, we consider and weigh all the evidence and set aside the finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See id.* In so doing, we do not pass on the witnesses' credibility or substitute our judgment for that of the trier of fact. *See id.*

 When no findings of fact were filed, as here, the reviewing court implies all necessary findings to support the judgment. *See Wade v. Commission for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.-Houston [1st Dist.] 1997, no pet.). Implied findings of fact, like the trial court's findings, may be challenged for legal and factual sufficiency. *See id.* The standard of review is the same as that applied to a jury's findings and a trial court's findings of fact. *See id.; see also Vickery*, 5 S.W.3d at 258. However, where no findings of fact were entered, the trial court's judgment will be affirmed if it can be upheld upon any basis that has support in the record under any theory of law

applicable to the case. *See Vickery*, 5 S.W.3d at 252.

*Credibility of Testimony*

 In her first issue, Curtis devotes several pages of her brief to arguing that the trial court's judgment was not supported by sufficient evidence because the testimony of Chadderdon was inconsistent and lacked credibility. "The trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony, and we may not substitute our judgment for that of the trial court in a bench trial [even if] we disagree with the court's findings." *Cohn v. Commission for Lawyer Discipline*, 979 S.W.2d 694, 696 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *see also Vickery*, 5 S.W.3d at 258. Accordingly, Curtis's argument challenging the trial court's judgment based upon the credibility of a witness is not eligible for appellate review.[2] *See id.* We overrule issue number one.

*Bad Faith*

 In her second issue, Curtis contends that the trial court's judgment was not supported by sufficient evidence because the court did not "specifically find that [her] actions constituted or were tantamount to 'bad faith.'" As noted above, no findings of fact and conclusions of law were entered by the trial court. Curtis argues that the trial court was obligated to enter findings of fact to support the judgment because she filed a request for findings of fact and conclusions of law. While the record shows that Curtis did file such a request, she did not file a "Notice of Past

---

against her by "clear and convincing evidence." However, "clear and convincing evidence" is not the correct burden of proof shouldered by the Commission in a disciplinary action. Rather, in a disciplinary action against an attorney, the Commission must prove its allegations by a preponderance of the evidence. *See* Tex.R. Disciplinary. P. 3.08C, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit G app. A–1 (Vernon 1998).

2. We note that Curtis failed to provide any citations to the record in support of her first issue. "An appellate court is under no duty to make an independent search of the record for evidence supporting an appellant's position." *Wade v. Commission for Lawyer Discipline*, 961 S.W.2d 366, 373 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Such an omission constitutes a waiver of the issue presented for review. *See id.*

Due Findings of Fact and Conclusions of Law." *See* TEX.R. CIV. P. 297.[3]

■ Texas Rule of Civil Procedure 297 provides, in part, the following:

If the court fails to file timely findings of fact and conclusions of law, the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties in accordance with Rule 21a a "Notice of Past Due Findings of Fact and Conclusions of Law" which shall be immediately called to the attention of the court by the clerk. Such notice shall state the date the original request was filed and the date the findings and conclusions were due.

TEX.R. CIV. P. 297. The failure to file a notice of past due findings of fact waives the right to complain about the trial court's failure to file findings of fact and conclusions of law. *See Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255 (Tex.1984). No such notice appears in the record of this case. Although the record shows that Curtis filed a "second" request for findings of fact and conclusions of law eleven days after her first request and nine days before the findings of fact and conclusions of law were even due, it complies with Rule of Civil Procedure 297 in neither form nor substance. *See, e.g., State Bar of Texas v. Heard*, 603 S.W.2d 829, 833 (Tex.1980). Specifically, the document filed by Curtis is not titled "Notice of Past Due Findings of Fact and Conclusions of Law," nor does it state the date the original request was filed and the date the findings and conclusions were due. *See* TEX.R. CIV. P. 297. Curtis's complaint about the trial court's failure to enter findings of fact is therefore waived. *See Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 255.

Curtis also contends in her second through sixth issues presented for review that the evidence was insufficient to sup-

port a finding that she acted in bad faith; she contends the evidence demonstrated that she acted in good faith. We interpret Curtis's complaints as challenges to the sufficiency of the evidence to support each of the violations of the Texas Disciplinary Rules of Professional Conduct alleged by the Commission. We will address each seriatim.

*Rule 1.04(a)—Fees*

■ The first violation that the Commission alleged against Curtis was that she entered into an arrangement with Harrison and Sonnier to charge or collect an illegal or unconscionable fee. Rule 1.04(a) provides that a "lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9). The record shows that Harrison entered into an employment and contingency fee contract with Chadderdon. The contract provided that Chadderdon would receive 30% of any recovery if her case settled prior to jury selection, 40% if jury selection commenced, and 50% if the case was appealed. Shortly after Chadderdon agreed to allow Curtis to assist her in representing Harrison, Curtis contacted Harrison—without Chadderdon's knowledge—and asked her to sign a second contingency fee contract with her. Harrison signed the second contract. It provided that if any recovery was obtained, Curtis would receive 40% if the case settled prior to jury selection, 45% if jury selection commenced, and 50% if the case was appealed. The record shows that the terms of the second contract had no effect on the terms of the first contract between Chadderdon and Harrison. Thus, Harrison was obligated under two separate contingency fee contracts. The two contracts effectively

---

**3.** The Texas Rules of Disciplinary Procedure expressly provide that "[e]xcept as varied by these rules, the Texas Rules of Civil Procedure apply." *See* TEX.R. DISCIPLINARY P. 3.08B.

permitted attorney fees of 70% if Harrison's case settled prior to jury selection, 85% if jury selection commenced, and 100% if her case was appealed. Additionally, under the second contract with Curtis, Harrison was obligated to pay Curtis $150 per hour. After Harrison demanded that Curtis return her file to Chadderdon, Curtis attempted to collect $23,000 from Chadderdon for her time expended in Harrison's case.

Similarly, the record shows that Sonnier entered into an employment and contingency fee contract with Chadderdon. Sonnier's contract provided that Chadderdon would receive 30% of any recovery if her case settled prior to jury selection, 40% if jury selection commenced, and 50% if the case was appealed. Shortly after Chadderdon agreed to allow Curtis to assist her in representing Sonnier, Curtis contacted Sonnier—without Chadderdon's knowledge—and asked her to sign a second contingency fee contract with her. Sonnier signed the second contract. It provided that if any recovery was obtained, Curtis would receive 30% if the case settled prior to jury selection, 40% if jury selection commenced, and 50% if the case was appealed. The record shows that the terms of the second contract had no effect on the terms of the first contract between Chadderdon and Sonnier. Thus, Sonnier was obligated under two separate contingency fee contracts. The two contracts effectively permitted attorney fees of 60% if Sonnier's settled prior to jury selection, 80% if jury selection commenced, and 100% if her case was appealed. Additionally, under the second contract with Curtis, Sonnier was obligated to pay Curtis $200 per hour. After Sonnier demanded that Curtis return her file to Chadderdon, Curtis attempted to collect $4,100 from Chadderdon for her time expended in Sonnier's case.

We have no difficulty in concluding that the record supports a finding that the second two contingency contracts that Curtis drafted and had Harrison and Sonnier execute resulted in unconscionable fees. *See*

*Kershner v. State Bar of Texas*, 879 S.W.2d 343, 347 (Tex.App.-Houston [14 th Dist.] 1994, writ denied); *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b). The record shows that the contingency fees under both contracts that Harrison and Sonnier were obligated for were far in excess of what is reasonable and customary. Furthermore, the additional hourly rates included in the second contracts of $150 and $200 per hour, respectively, supports a finding that the attorney fee arrangements in each contract were unconscionable. Thus, having reviewed all the evidence in the record, we conclude that the evidence was legally and factually sufficient to support a finding that Curtis violated Rule 1.04(a). *See Vickery*, 5 S.W.3d at 258.

### Rule 7.01(d)—Firm Name

The second violation that the Commission alleged against Curtis was that she held herself out as a partner with another lawyer when they were in fact not partners. Rule 7.01(d) provides that a "lawyer shall not hold himself or herself out as being a partner, shareholder, or associate with one or more other lawyers unless they are in fact partners, shareholders, or associates." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 7.01(d).

The second contingency fee contract signed by Sonnier states that "[t]he undersigned 'Client' agrees to hire the Law Office of _____ and _____ as 'Attorney(s)'...." Curtis filled in the two blank spaces with her name and Joanne Chadderdon's name. The combination of the two lawyers' names, as used in the Sonnier employment contract drafted by Curtis, is some evidence to support the finding that Curtis held herself out as being a partner or shareholder with Chadderdon when in fact they shared no such relationship. The "Law Office of Mary [Curtis] and Joanne Chadderdon" strongly suggests the existence of a single entity. The evidence was legally and factually sufficient to support a finding that Curtis violated Rule 7.01(d). *See Vickery*, 5 S.W.3d at 258.

*Rule 7.02(a)(1) —False or Misleading Communication about another Lawyer*

■ The third violation that the Commission alleged against Curtis was that she made a false or misleading communication about the qualifications of Chadderdon. Rule 7.02(a)(1) provides the following:

A lawyer shall not make a false or misleading communication about the qualifications or the services of any lawyer or firm. A communication is false or misleading if it:

contains a material representation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading. . . .

*See* TEX. DISCIPLINARY R. PROF'L CONDUCT 7.02(a)(1).

The record shows that on at least one occasion, Curtis told Harrison and Sonnier, respectively, that Chadderdon was seriously ill and may have cancer. She further told each of them that because of her illness there was a probability that Chadderdon would not be able to fulfill her duties in representing them. Harrison testified that Curtis told her that Chadderdon "was ill and that she was being real quiet about it." She testified that Curtis told her that Chadderdon's illness "was something that was very serious and she mentioned cancer." Harrison also testified that Curtis told her that she was having to do more of the work on her case because Chadderdon was too ill. However, Chadderdon testified that she was never seriously ill nor otherwise physically or mentally unable to perform her duties to Harrison and Sonnier.

We conclude that the evidence was legally and factually sufficient to support a finding that Curtis violated Rule 7.02(a)(1) by making a false or misleading communication about the qualifications of another lawyer. *See Vickery,* 5 S.W.3d at 258.

*Rule 8.04(a)—Misconduct*

■ The final violations the Commission alleged against Curtis were that she knowingly violated the Texas Disciplinary Rules of Professional Conduct and that she engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(1), (3). The Comment to Rule 8.04 states that this rule "provides a comprehensive restatement of all forms of conduct that will subject a lawyer to discipline . . . ." *See id.,* Comment.

From the record presented, we find that the trial court could have reasonably inferred that Curtis knowingly engaged in conduct involving dishonesty or misrepresentation. The uncontroverted evidence shows that Curtis misrepresented material facts about Chadderdon's health and qualifications, likely in an effort to induce Harrison and Sonnier to execute additional employment contracts so as to obtain their cases and potential contingency fees for herself. The evidence also shows that Curtis knowingly misrepresented to Harrison that Chadderdon authorized the second employment contracts and that it was a common practice for clients to execute multiple employment contracts with attorneys. Harrison testified that Curtis "lied to me about the contract and the health of Ms. Chadderdon and just the circumstances around the contract itself."

We conclude that the evidence was legally and factually sufficient to support a finding that Curtis violated Rule 8.04(a). *See Vickery,* 5 S.W.3d at 258. Her assertion that the evidence was insufficient to support a finding that she acted in bad faith is without merit. Similarly, her assertion that she acted in good faith is not supported by the record. Issues two through six are overruled.

*Sanctions*

In her seventh and tenth issues presented for review, Curtis contends that the trial court abused its discretion in imposing certain sanctions and in awarding attorney fees and costs to the Commission.

■ The trial court has broad discretion to determine whether an attorney

guilty of professional misconduct should be reprimanded, suspended, or disbarred. *See State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 659 (Tex.1994), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). In determining the appropriate sanction for attorney misconduct, a trial court must consider the nature and degree of the professional misconduct, the seriousness of and circumstances surrounding the misconduct, the loss or damage to clients, the damage to the profession, the assurance that those who seek legal services in the future will be insulated from the type of misconduct found, the profit to the attorney, the avoidance of repetition, the deterrent effect on others, the maintenance of respect for the legal profession, the trial of the case, and other relevant evidence concerning the attorney's personal and professional background. *See id.; see also* TEX.R. DISCIPLINARY P. 3.10.

The first sanction imposed by the trial court and of which Curtis complains prohibits her from holding herself out as an attorney. She contends that this sanction is "improper" because it is "not provided for in the State Bar Rules." We disagree. Rule 3.11 provides that in "all judgments imposing disbarment or suspension, the court *shall enjoin* the Respondent from practicing law or *from holding himself or herself out as an attorney ...."* *See* TEX.R. DISCIPLINARY P. 3.11 (emphasis added). Consequently, Curtis's complaint is without merit.

Next, as we interpret it, Curtis contends that all the sanctions imposed against her by the trial court were improper. The trial court sanctioned Curtis by suspending her from the practice of law for one year, six months active and six months probated. While Curtis presents no argument to support a contention that the period of her suspension is too long or otherwise too severe, we note that the terms of her suspension are less severe than advocated by the Commission at trial. The Commission asked the trial court to suspend Cur-

tis from the practice of law for one full year, not probated for any period. Based upon the record and the lack of any argument presented by Curtis, we conclude that the trial court's order relating to the period of her suspension was not an abuse of discretion.

▮▮▮▮ Curtis also contends that the trial court's order requiring her to pay the Commission $7,087 for attorney fees and $651.95 for court costs was not supported by the evidence. We note that attorney fees and court costs are an appropriate sanction for violating a disciplinary rule. *See Vickery,* 5 S.W.3d at 265. The Commission presented testimony before the trial court showing that it expended 47.25 hours in preparing its case against Curtis and the precise dollar amount of court costs. Further, the Commission presented testimony showing that $150 per hour is a usual and customary hourly fee in and around Harris County. The number of hours multiplied by the hourly rate supports the trial court's attorney fee sanction. We find no abuse of discretion.

▮▮▮ Finally, Curtis contends that the trial court erred by not staying her suspension order pending appeal. Rule 3.14 provides that a judgment of suspension may be stayed during the pendency of appeals therefrom if the trial court finds, upon competent evidence, that "the Respondent's continued practice of law does not pose a continuing threat to the welfare of Respondent's clients or to the public." *See* TEX.R. DISCIPLINARY P. 3.14. After judgment was entered against her, Curtis had the burden to prove her continued practice of law did not pose a threat. *See id.; Wade,* 961 S.W.2d at 373. Curtis has failed to direct us to any place in the record where there is "competent evidence" supporting the contention made in her brief that her continued practice of law did not pose a threat to the public. Under these circumstances, we conclude that Curtis failed to meet her burden of proving that her continued practice of law did not pose a threat to the public. *See Wade,*

961 S.W.2d at 373. Issues seven and ten are overruled.

### Breach of Fiduciary Duty by the Commission for Lawyer Discipline

In her eighth issue presented for review, Curtis contends that the Commission breached a "fiduciary duty to [her] to provide protection from abuses of power throughout the disciplinary process." None of the litany of complaints lodged against the Commission in Curtis's eighth issue are supported by the record. Nor does Curtis provide any citations to the record to support her argument. We find Curtis's eighth issue to be without merit and otherwise waived. *See Wade*, 961 S.W.2d at 373. Issue eight is overruled.

### Breach of Fiduciary Duty by Trial Counsel

In her ninth issue presented for review, Curtis contends that her trial counsel "breached his fiduciary duty to [her], destroying the Attorney-client relationship...." She also contends that the reason she did not appear for her trial was because of her trial counsel's acts or omissions.

None of the complaints that Curtis makes against her trial counsel, concerning a breach of his fiduciary duty, are supported by the record, nor does her brief contain any citations to the record. This contention is without merit and otherwise waived. *See Wade*, 961 S.W.2d at 373.

Concerning her failure to appear for trial, we note that prior to the commencement of the trial, counsel for Curtis explained to the court that within a few days prior to trial, there was discussion that this case should be submitted to the trial court upon stipulated facts. Indeed, he explained to the trial court that the Commission "went to the trouble of drafting a proposed set of agreed facts...." But, he explained to the trial court, just a couple of days before the trial, Curtis "changed her complexion completely." He told the trial court that "now she wanted extensive discovery, she wanted jury trials, she wanted a whole lot of things we had never talked about before and was very critical of me for not doing these things." She demanded a motion for continuance be filed. Trial counsel explained to the trial court, *inter alia*, that even though Curtis told him she fully expected that her motion for continuance would be granted, he sent a letter to her explaining that "this case was still set for trial this morning and ... I expected her to be here this morning."[4] He told the trial court that he sent the letter by certified mail and by fax. He told the trial court that the fax transmission did not go through because "apparently, she turned off her fax machine." He stated that the he tried to fax the same letter to Curtis the following day "from a place not at my office address, but as a matter of fact, Office Depo, to see if she would accept the fax from another station and not the station of my office. And apparently the fax was still turned off." He explained to the trial court that the "tender of my letter was: Come to trial. You're still on for trial, and I'll be here. Present your motion for continuance."

---

4. Curtis relies on *Craddock v. Sunshine Bus Lines* to support her contention that because she did not personally appear for her trial she is entitled to have the trial court's judgment set aside and a new trial. *See* 134 Tex. 388, 133 S.W.2d 124 (1939). In *Craddock*, the defendant failed to appear for trial and a default judgment was entered. *See* 133 S.W.2d at 125. The Texas Supreme Court held that a default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. *See id.* at 126. In the instant case, however, Curtis did answer and appear for trial through her retained counsel. This is not a case where a *default* judgment was entered because of the defendant's failure to answer and appear for trial. Consequently, *Craddock* has no application to this case.

Curtis's assertion that her trial counsel's act or omissions were the basis for her failure to appear for trial are not supported by the record.[5] We find that the complaints set forth in Curtis's ninth issue are without merit. Issue nine is overruled.

The judgment is affirmed.

J. EDELMAN concurs in the result only.

5. We note that Curtis included with her brief a multi-paged two-volume appendix consisting of sundry documents. She cites to various of these documents to support the issues she raises on appeal. The vast majority of these documents, however, are not part of record. Consequently, we are unable to consider them. *See Mitchison v. Houston Ind. School Dist.*, 803 S.W.2d 769, 771 (Tex.App.-Houston [14 th Dist.] 1991, writ denied).