# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00056-CV

**Mary Arnett, Appellant**

**v.**

**Angela Marie Arnett, Appellee**

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 14,952, HONORABLE JOE CARROLL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellee Angela Marie Arnett gave birth to a son, A.M.A., in September 1992, when she was seventeen years old. A.M.A. has severe health issues and requires significant medical care. Six days after A.M.A. was born, appellee signed an affidavit relinquishing her parental rights and designating her parents, appellant Mary Arnett and Howard Arnett, as managing conservators of the child. On October 1, 1992, appellant and Howard Arnett filed a suit affecting the parent-child relationship (SAPCR). That same day, the trial court signed a "preadoptive temporary order" naming appellant and Howard Arnett as A.M.A.'s temporary managing conservators.[1] A.M.A. and appellee lived with appellant until late 1999 or early 2000, when appellee moved out, leaving A.M.A. with appellant. In June 2001, appellant went forward with the termination and adoption proceeding, and in September 2001, the trial court signed an order terminating appellee's parental rights and naming

---

[1] Howard Arnett died in 1994.

appellant as A.M.A.'s adoptive parent. In November 2002, appellee filed a petition for bill of review seeking to overturn the termination/adoption order. In January 2005, the trial court signed an order granting appellee's bill of review and setting aside the termination of her parental rights and appellant's adoption of A.M.A.[2] Appellant appeals from the trial court's orders granting a bill of review and dismissing the 1992 temporary order and termination/adoption suit. We reverse and render judgment denying appellee's petition for bill of review.

Appellant contends in her second issue that the trial court erred in granting the petition because appellee did not present legally or factually sufficient evidence to show that her execution of the affidavit of relinquishment was due to fraud, duress, or coercion. *See* Tex. Fam. Code Ann. § 161.211(c) (West 2002).

"A bill of review is an equitable proceeding by a party to a former action who seeks to set aside a judgment that is no longer appealable or subject to a motion for new trial." *Ortega v. First RepublicBank Fort Worth, N.A.*, 792 S.W.2d 452, 453 (Tex. 1990) (op. on reh'g). The party seeking a bill of review must show that (1) she has a meritorious claim or defense (2) and that she was prevented from asserting her claim or defense by the opposing party's fraud, accident or wrongful conduct, (3) unmixed with any fault or negligence of her own. *Id.* A party seeking to

---

[2] We initially dismissed this appeal for want of jurisdiction, explaining that an order granting a bill of review that does not dispose of the merits of the underlying case is interlocutory in nature, *see Jordan v. Jordan*, 907 S.W.2d 471, 472 (Tex. 1995); *Tesoro Petroleum v. Smith*, 796 S.W.2d 705, 705 (Tex. 1990), but then withdrew our opinion and abated the cause to the trial court for entry of a final order. *See Arnett v. Arnett*, No. 03-05-00056-CV, 2005 Tex. App. LEXIS 9507, *4 (Tex. App.—Austin Nov. 10, 2005, no pet.). On March 21, 2006, the trial court signed a "final custody order," setting aside all temporary orders, the termination of appellee's parental rights, and the adoption order. It is from this final order that the appeal proceeds.

overturn a termination order based on an unrevoked affidavit of relinquishment is limited in her attack to arguing fraud, duress, or coercion in the execution of the affidavit. Tex. Fam. Code Ann. § 161.211(c). Fraud may be committed through active misrepresentation or passive silence and is "an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue and unconscientious advantage." *Vela v. Marywood*, 17 S.W.3d 750, 760-61 (Tex. App.—Austin 2000), *pet. denied*, 53 S.W.3d 684 (Tex. 2001). Coercion occurs if someone is compelled to perform an act "by force or threat." Black's Law Dictionary 252 (7th ed. 1999); *see* Tex. Penal Code Ann. § 1.07(a)(9) (West Supp. 2007). Duress occurs when, due to some kind of threat, a person is "incapable of exercising [her] free agency" and unable to withhold consent. *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005).

Assuming that appellee's petition for bill of review was properly brought under section 161.211(a) (limiting time to attack termination order to six months after signing of order), the evidence in this case does not support the trial court's granting of a bill of review. There is no evidence of fraud, duress, or coercion in appellee's execution of the affidavit, without which her attack on the termination/adoption order cannot succeed. *See* Tex. Fam. Code Ann. § 161.211(c).

At the hearing on her petition for bill of review, appellee testified that despite signing the affidavit of relinquishment, she always intended to regain custody of A.M.A. after she graduated from college and stabilized her life. She said that she and appellant planned to return to court and have custody "returned . . . back to me." Appellee graduated from nursing school in 1998 and is now married and living in Copperas Cove, and testified that when she moved out from appellant's house

in 1999, she wanted to take A.M.A. with her but was told she could not take him from appellant's care. Appellee believed until about 1999 that her parental rights had been terminated. When she learned that her rights had not been terminated, she consulted with four attorneys but was told there was nothing she could do to regain custody at the time. Despite intending to regain custody and even after seeking legal advice, appellee never attempted to revoke her affidavit of relinquishment. She testified that she did not realize her affidavit was revocable and that she did not believe appellant would go to court to terminate appellee's rights and adopt A.M.A.

Appellant testified that in about 2000, appellee asked her not to go forward with the termination. Appellant replied that she did not think that holding off with the proceeding was in A.M.A.'s best interest, and appellee told appellant, "Do what you have to do." Appellant testified that she did not proceed with the termination/adoption proceeding until 2001 because her "understanding was that the termination was done" in 1992, when the trial court entered its temporary orders. She said, "I don't know why there was this wait. I had no idea how adoptions took place. I spoke with my attorney. He said it was still an ongoing case." Appellant believed termination and adoption was in A.M.A.'s best interest because it allowed him to collect benefits, including health benefits, through appellant's deceased husband, who was a veteran.

In June 2001, appellant filed an amended petition seeking to move ahead with the termination/adoption proceeding. Appellant did not inform appellee that she was going to proceed or that she had proceeded with the termination and adoption.[3] In September 2001, based on

---

[3] In the affidavit of relinquishment, appellee waived the right to "issuance, service, and return of all process in any suit to terminate the parent-child relationship . . . without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

appellee's affidavit of relinquishment, the trial court signed an order terminating her parental rights and allowing appellant to adopt A.M.A. Appellee did not learn of the termination/adoption order until April 2002, when she found a copy of it in her mother's paperwork; she filed her petition for bill of review in November 2002.

Appellee did not testify that she was misled or tricked into signing the affidavit or into failing to revoke it in the intervening years, nor did she testify that appellant lied or deceived appellee into believing that appellant would not move forward to adopt A.M.A. Appellee testified that she did not believe appellant would go forward with the termination but did not testify that this belief was based on any wrongful acts by appellant. Appellant told appellee repeatedly that she did not believe that stopping the termination/adoption proceeding was in A.M.A.'s best interest. When appellee signed the affidavit of relinquishment, she waived a right to notice of further proceedings, and appellant's failure to inform appellee that she was moving forward with the termination/adoption proceeding does not amount to fraud, duress, coercion, or other wrongful conduct.[4]

Although the trial court did not file findings of fact and conclusions of law, and appellant did not file a notice of past-due findings and conclusions, *see* Tex. R. Civ. P. 297, which means that we must imply all findings necessary to support the judgment, *see Curtis v. Commission for Lawyer Discipline*, 20 S.W.3d 227, 231 (Tex. App.—Houston [14th Dist.] 2000, no pet.), we still must evaluate those implied findings for evidentiary sufficiency, using the standards we apply to jury or trial court findings and upholding the trial court's decision if we find evidentiary support for any legal theory of law applicable to the case. *See Curtis*, 20 S.W.3d at 231. Because there is no

---

[4] At oral argument, appellee's counsel conceded as much, agreeing that there was no evidence of fraud, duress, or coercion to be found in the record.

5

evidence of fraud, duress, coercion, or other wrongful act in the making of the affidavit of relinquishment, *see* Tex. Fam. Code Ann. § 161.211(c), the evidence is legally insufficient to support the trial court's granting of appellee's petition for bill of review. We sustain appellant's second issue on appeal. We reverse the trial court's order and render judgment denying appellee's petition for bill of review.[5]

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Rendered

Filed:   May 2, 2008

---

[5] Due to our resolution of appellant's second issue, we need not decide her remaining two issues related to the timeliness of appellee's petition and the procedures employed by the trial court.