**Affirmed and Memorandum Opinion filed March 14, 2019.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-17-00666-CV

---

## JACK ZEEV YETIV, Appellant

### V.

## COMMISSION FOR LAWYER DISCIPLINE, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2016-46138**

---

## M E M O R A N D U M   O P I N I O N

During the middle of a trial, attorney Jack Yetiv threatened to file a disciplinary grievance against opposing counsel Bruce Wilkin unless Wilkin told the trial judge that Wilkin was withdrawing an argument Wilkin had made in court. The Commission for Lawyer Discipline brought this disciplinary action against Yetiv for violating Rule 4.04(b)(1) of the Texas Disciplinary Rules of Professional Conduct, alleging that Yetiv threatened to present disciplinary charges "solely to gain an advantage in a civil matter." *See* Tex. Disciplinary Rules Prof'l Conduct

R. 4.04(b)(1), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A. After a bench trial, the trial court found that Yetiv violated Rule 4.04(b)(1), suspended Yetiv from the practice of law for four months, probated the suspension, and ordered Yetiv to pay attorney's fees to the State Bar of Texas.

On appeal, Yetiv contends that (1) the trial court erred by considering "undisclosed extra-record evidence," (2) the trial court erred by disregarding the Commission's "binding admission" concerning the meaning of the word "solely" in Rule 404(b)(1), and (3) the evidence is legally and factually insufficient to support the trial court's finding that Yetiv threatened a disciplinary charge solely to gain an advantage in a civil matter.

We affirm.

## I. BACKGROUND

Yetiv's company, Westview, sued its insurance company when the insurance company refused to pay a claim after a fire. *See Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 589–91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). During the trial, Yetiv testified that he delayed reporting the fire to the insurance company and a bankruptcy trustee on the advice of his counsel, Edward Rothberg. When the insurance company subpoenaed Rothberg, Westview moved to quash based on attorney-client privilege. Wilkin, one of the insurance company's lawyers, argued that the privilege had been waived for several reasons, including the crime–fraud exception—in particular, bankruptcy or insurance fraud.

Yetiv requested, and the trial court granted, an evidentiary hearing to explore the crime–fraud exception. Both Rothberg and Yetiv testified. Rothberg testified

2

that he had no memory of telling Yetiv not to tell anyone about the fire. The trial court ruled that the crime–fraud exception applied and allowed the discovery.

On the following day, a Friday, the trial was in recess. That morning, Yetiv sent an email to Wilkin, which is appended to this opinion in Appendix A. In the email, Yetiv threatened to file a grievance against Wilkin "unless, by noon on Monday, you announce in open court that you now realize that there was no factual or legal basis for your allegations, and that you are sorry for having made them and that you now withdraw them ENTIRELY." Yetiv continued, "If you do make the above statement—the language of which will have to be agreed upon—I will release you and [your firm] from all potential liability in connection with the statement you made and will agree not to file a grievance against you and [your firm] with the State Bar or related authorities." Yetiv encouraged Wilkin to "[t]hink about it carefully." Yetiv concluded, "Choose wisely."

On Monday, Wilkin did not make the statement requested by Yetiv. Westview presented additional witness testimony, and both parties rested and closed. Wilkin brought Yetiv's email to the trial court's attention. The jury found in favor of the insurance company. Ultimately, the trial court sanctioned Yetiv for sending the email, and this court affirmed the jury's verdict and the sanction. *See id.* at 616–17.

In this disciplinary proceeding, Wilkin testified that Yetiv's threat was "a trial tactic just trying to divert us from preparing for closing statements, preparing for the very comprehensive jury charge argument, making the decision on the morning of the day I told the Court I was going to make the decision of who to call in my case-in-chief whether or not to call somebody." Wilkin also testified that before Yetiv had sent the email, it was a very real possibility that Wilkin would have called Rothberg to testify. The goal for subpoenaing Rothberg in the first

3

place was to show that Yetiv's new excuse for his not reporting the fire was not credible.

Yetiv testified that there was "no conceivable advantage" related to the trial court's rulings that Yetiv could have gained from sending the email. He testified that he had two motives for sending the email: (1) to clear his reputation; and (2) to find out if Wilkin had made a mistake by accusing Yetiv of bankruptcy or insurance fraud. Yetiv testified that if he could do it over again, he would not have written the email. Instead, he "would [have] just grieved them."

Yetiv's appellate counsel in the *Westview* case, Alan Daughtry, testified that Yetiv called Daughtry soon after Wilkin made the argument about the crime-fraud exception. Daughtry described Yetiv as "inflamed," "outraged," and "absolutely livid" about the "wrongful allegations of criminal conduct." Yetiv never said anything to Daughtry that would have caused Daughtry to believe that Yetiv was seeking some advantage in the litigation by sending the email. Daughtry testified, "All he ever cared about [was] clearing his reputation, and he was greatly concerned about that."

At the conclusion of trial, the court found that Yetiv violated Rule 4.04(b)(1), and the court ordered a four-month suspension, fully probated, and a sanction of $4,500 in attorney's fees.

## II.    "UNDISCLOSED EXTRA-RECORD EVIDENCE"

In his first issue, Yetiv contends that the trial court erred by considering "undisclosed extra-record evidence." The Commission contends, among other things, that Yetiv failed to preserve this alleged error. We agree with the Commission.

## A.    Procedural Background

At the conclusion of the trial, the court made several statements to suggest that the court had reviewed transcripts from the *Westview* trial, which were not offered into evidence in this case:

> I think, again, you sent it out to a Judge who had already made his determination after two different hearings. After your Evidentiary Hearing that is part of this reason.
>
> In fact, I know that it's not before the Court in terms of evidence, but I have it in mind in terms of determining your credibility as well. But the Court did find, in fact, after the hearing, that it was related to the Crime-Fraud Exceptions. And at one point during that Evidentiary Hearing you said, look, that's what I'm here to determine, if you will.
>
> And, so, that testimony that kind of contradicted what was going on in that hearing. And, again, that transcript is not before me in evidence, but I have knowledge of it and I used that in part of looking at and coming up with my ruling.
>
> Is there any other matter that I need to take up on y'all's behalf? Any other finding?

Yetiv did not object to the trial court's consideration of matters that were not in evidence. Yetiv raised this complaint for the first time in his motion for new trial after the trial court signed its judgment.

## B.    No Error Preserved

To preserve error, an appellant must make a *timely* request, objection, or motion. Tex. R. App. P. 33.1(a)(1). An objection is timely if it is asserted at the earliest opportunity or interposed at a point in the proceedings when the trial court has an opportunity to cure any alleged error. *Laven v. THBN, LLC*, No. 14-13-00440-CV, 2014 WL 6998098, at *3 (Tex. App.—Houston [14th Dist.] Dec. 11, 2014, no pet.) (mem. op.). A complaint is not timely when made for first time in a

motion for new trial if the complaint could have been urged earlier. *Id.*; *accord In re A.E.*, No. 02-18-00124-CV, 2018 WL 3763928, at *3 n.2 (Tex. App.—Fort Worth Aug. 9, 2018, no pet.) (mem. op.); *Matbon, Inc. v. Gries*, 288 S.W.3d 471, 490 (Tex. App.—Eastland 2009, no pet.); *Hoxie Implement Co., v. Baker*, 65 S.W.3d 140, 145 (Tex. App.—Amarillo 2001, pet. denied); *see also St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex. 1998) (no error preserved regarding Mary Carter agreement when raised for first time in a motion for new trial); *Brown v. Pittsburgh Corning Corp.*, 909 S.W.2d 101, 104 (Tex. App.—Houston [14th Dist.] 1995, writ denied) ("A party cannot wait until the trial is finished, then seek to reverse an unfavorable verdict by complaining of an error which the trial court could have corrected had it been timely informed of the error.").

Yetiv contends that the trial court's comments indicate that the court relied on "undisclosed extra-record evidence." But Yetiv did not object at the time the trial court indicated it was considering the record from the prior proceedings. Yetiv had the opportunity to raise this complaint at trial, but he did not raise it until after the trial court signed its judgment. Yetiv's complaint was not timely because it was made for the first time in a motion for new trial. Thus, no error is preserved.

Yetiv's first issue is overruled.

### III.  "BINDING ADMISSION"

In his second issue, Yetiv contends, "The judgment should be reversed and rendered because the trial judge disregarded the Commission's legally-correct binding admission that the word 'solely' as used in DR 4.04(b)(1) means '100%.'" The rationale for Yetiv's argument concerning a "binding admission" is unclear, and Yetiv cites no authority relevant to the issue.

6

The Texas Disciplinary Rules of Professional Conduct are interpreted like statutes. *Comm'n for Lawyer Discipline v. Hanna*, 513 S.W.3d 175, 178 (Tex. App.—Houston [14th Dist.] 2016, no pet.). And, because the interpretation of a statute is a question of law that a court determines de novo, the court is not bound to accept the Commission's interpretation. *See Oleksy v. Farmers Ins. Exchange*, 410 S.W.3d 378, 383 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Thus, even if the trial court had disregarded the Commission's purported admission concerning the meaning of the rule, there would be no error.

Yetiv's second issue is overruled.

## IV.   LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his third through sixth issues, Yetiv contends that there is no evidence he made a threat "solely to gain an advantage" in a civil matter, and that the trial court's finding as such was against the great weight of the evidence. Although Yetiv asks for the rendition of a judgment in his favor under each issue, and although he cites no authority concerning the standards of review for legal or factual sufficiency, we understand his arguments to address both the legal and factual sufficiency of the evidence.

### A.   Finding of Fact that Yetiv Violated Rule 4.04(b)(1)

When the record does not include findings of fact, a reviewing court implies all necessary findings to support the judgment. *See Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 231 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Under these circumstances, a reviewing court will affirm the trial court's ruling on any available legal theory that finds support in the evidence. *Exterior Bldg. Supply, Inc. v. Bank of Am., N.A.*, 270 S.W.3d 769, 772 (Tex. App.—Dallas 2008, no pet.) (citing *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987)). If

7

findings are properly requested under Rules 296 and 297 of the Texas Rules of Civil Procedure, and the trial court does not file findings, then "an appellate court is not required to imply all necessary findings in support of the trial court's judgment." *Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Yetiv notes in his brief that he requested findings of fact and notified the trial court of past due findings, and he contends that the trial court failed to file findings. But Yetiv does not assign error to the trial court's purported failure to file findings. Yetiv does not request an abatement for the trial court to file findings. Nor does Yetiv contend that he suffered any harm. *See generally id.* at 54–55 (noting that abatement is the initial remedy for a trial court's refusal to file findings, and the controlling issue for determining harm after an abatement is whether the appellant would need to guess at the reasons for the trial court's decision; holding there was no harm because the appellant was able to properly present the issues on appeal and this court was able to address and decide the point of error).[1]

Rather, Yetiv contends that this court "should not make any presumption in this appeal against Yetiv" and that this court should give no deference to the trial court's judgment.

The trial court announced in its judgment that "the Court finds and concludes" that Yetiv violated Rule 4.04(b)(1) of the Texas Disciplinary Rules of Professional Conduct. Specifically, the court found:

> Respondent violated the following Texas Disciplinary Rules of Professional Conduct: Rule 4.04(b)(1) [a lawyer shall not present,

---

[1] Yetiv does not ask for the appellate record to be supplemented with any findings of fact the trial court may have filed, although Yetiv notes that the trial court sent the parties an email, in which the trial court wrote that the court had indeed filed findings of fact and conclusions of law.

participate in presenting, or threaten to present: criminal or disciplinary charges solely to gain an advantage in a civil matter].[2]

Although findings should be filed as a separate document and not recited in a judgment, "findings improperly included in a judgment still have probative value and are valid as findings" if they are not supplanted by separately filed findings. *In re C.A.B.*, 289 S.W.3d 874, 880–81 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Regardless of whether Yetiv is challenging an implied or express finding that he violated Rule 4.04(b)(1), the standard of review for challenges to implied and express findings is the same. *See Exterior Bldg. Supply*, 270 S.W.3d at 772–73 (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam)). In this case, there was only one available legal theory for the trial court to consider: whether Yetiv violated Rule 4.04(b)(1). Yetiv challenges this finding on appeal. Thus, we need not imply findings in support of the judgment to address Yetiv's legal and factual sufficiency challenges. The trial court made the necessary finding, and Yetiv has shown no harm from the trial court's purported failure to file separate findings. *See Elliott*, 118 S.W.3d at 54–55.

## B. Standards of Review

When a party challenges the legal sufficiency of the evidence to support a finding, we review the record in the light most favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We indulge every reasonable inference in support of the verdict. *Id.* at 822. We may not substitute our opinions on credibility for those of the fact-finder. *See id.* at 816–17; *see also In re J.O.A.*, 283 S.W.3d

---

[2] The brackets appear in the judgment.

336, 346 (Tex. 2009) (recognizing that the fact-finder, not the appellate court, is the sole arbiter of the witnesses' credibility and demeanor). The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

In a factual sufficiency review, we will set aside the verdict and remand for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (citing *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951)). We will weigh the evidence supporting the verdict along with evidence contrary to the verdict. *See id.* at 761–62. However, the fact-finder remains the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.* at 761. We must defer to the fact-finder's determinations so long as those determinations are reasonable. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004). We may not merely substitute our judgment for that of the fact-finder. *Golden Eagle Archery*, 116 S.W.3d at 761.

## C.   Analysis

In his fifth and sixth issues, Yetiv contends that there is no evidence and insufficient evidence to prove he made the threat of disciplinary charges to "gain an advantage" in a civil matter. In his third and fourth issues, Yetiv contends that even if there was an advantage to be gained, the threat was not made "solely" to gain an advantage.

### 1.   *Advantage*

Yetiv contends that neither the email nor the witnesses' testimony showed that Yetiv sought to gain an advantage in the *Westview* litigation. Yetiv suggests

that Rule 4.04(b)(1) should only encompass a quid pro quo involving the lawyer receiving a financial benefit of some kind. For example, this court held that evidence was sufficient to discipline a lawyer when the lawyer relayed to the opposing party (his then-wife) that he would report the party's alleged criminal conduct if the litigation was not resolved by settlement. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 261–62 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Similarly, another court of appeals held that evidence was sufficient to discipline a lawyer when the lawyer threatened to report his former client's stalking behavior to authorities in the same conversation that the lawyer asked the client to pay legal fees. *See Weiss v. Comm'n for Lawyer Discipline*, 981 S.W.2d 8, 17–19 (Tex. App.—San Antonio 1998, pet. denied).

Although *Vickery* and *Weiss* involved quid pro quo of the ultimate settlement of a matter and payment of money, Rule 4.04(b)(1) speaks only to an "advantage" in a civil matter. An "advantage" is "the quality or state of being superior" or "a more favorable or improved position or condition." *Advantage*, Webster's Third New International Dictionary 30 (1993). Thus, an advantage need not be a final settlement or payment of money. *Cf. Barrett v. Va. State Bar*, 611 S.E.2d 375, 381 (Va. 2005) (evidence sufficient under Virginia's similar disciplinary rule when the lawyer's motivation in threatening disciplinary complaints was to force opposing counsel to withdraw from representation).

Wilkin testified that Yetiv's threat, communicated during the middle of trial, was a tactic to divert attention from the defense's presentation of their case, preparation of the jury charge, and closing arguments. In the email, Yetiv made a threat conditioned on Wilkin's response, stating that Yetiv would file a disciplinary charge unless Wilkin took specific action during the trial. Yetiv demanded that Wilkin state in open court that Wilkin was retracting his assertion of the crime–

fraud exception, that there was no legal or factual basis for the assertion, and that Wilkin was sorry. No doubt, this action would have bolstered Yetiv's credibility in front of the trial court and lessened Wilkin's credibility. This action would have resulted in an "advantage" for Yetiv in the civil matter, however slight.

Although Yetiv testified that there was no conceivable advantage for making his threat, and nothing caused Daughtry to believe that Yetiv sought an advantage, we may not find legally or factually insufficient evidence by simply disagreeing with the trial court's reasonable determinations of credibility. *See City of Keller*, 168 S.W.3d at 816–17; *Garza*, 164 S.W.3d at 625. The evidence at trial would enable reasonable and fair-minded people to conclude that Yetiv sought an advantage in a civil matter, and this finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Vickery*, 5 S.W.3d at 261–62; *Weiss*, 981 S.W.2d at 17–19.

Yetiv's fifth and sixth issues are overruled.

### 2.    *Solely*

Yetiv contends that neither the email nor the witnesses' testimony showed that Yetiv's *sole* intent or motive was to gain an advantage in a civil matter. Yetiv contends that his "primary motive in writing his email was his concern about his reputation and the impacts that Wilkin's false accusations could have on Yetiv's legal career."

"Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Since intent is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *See id.* at 435 (regarding intent to defraud); *see*

12

*also Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002) (noting that a defendant's testimony concerning his intent is not conclusive irrespective of all other evidence, and a party's "state of mind can—indeed, must usually—be proved by circumstantial evidence").

The trial court could have disbelieved Yetiv's self-serving testimony and statements in the email concerning his motive for threatening a disciplinary charge against Wilkin. And, Daughtry's testimony that Yetiv was upset and angry about his reputation does not preclude a finding that Yetiv acted solely to gain an advantage in the civil matter. In the only case cited by Yetiv on appeal concerning the application of Rule 4.04(b)(1), this court held that the evidence was legally and factually sufficient although there was evidence that the lawyer "wanted to make [the opposing party's] life miserable." *See Vickery*, 5 S.W.3d at 261–62. Similarly, in *Weiss* the court of appeals held that the evidence was legally and factually sufficient although there was evidence that the lawyer's former client had been stalking the lawyer and that the lawyer threatened the client because of the stalking. *See* 981 S.W.2d at 18–19. And in *Barrett*, the evidence was sufficient although there was evidence that the lawyer believed the opposing counsel was engaging in unethical conduct. *See* 611 S.E.2d at 595–96. Thus, a lawyer's personal feelings about the opposing party or counsel does not preclude a violation of Rule 4.04(b)(1).

By the time Yetiv threatened Wilkin, the trial judge in the *Westview* case had already held a hearing at which Yetiv and Rothberg testified. Thus, Yetiv had a full opportunity to clear his reputation in open court, yet the judge still ruled that the crime–fraud exception applied. The trial court in this disciplinary proceeding could have considered these facts when judging Yetiv's credibility concerning his purpose for threatening Wilkin with a disciplinary charge.

The evidence in this case would enable reasonable and fair-minded people to conclude that Yetiv threatened Wilkin with a disciplinary charge *solely* to gain an advantage in a civil matter, and this finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Vickery*, 5 S.W.3d at 261–62; *Weiss*, 981 S.W.2d at 17–19.

Yetiv's third and fourth issues are overruled.

## V.    CONCLUSION

Threatening to use the criminal or disciplinary process solely to coerce a party in a private matter improperly suggests that a lawyer can manipulate the criminal process for personal gains and manipulate the legal system for personal advantage. *See* Tex. Disciplinary Rules Prof'l Conduct R. 4.04 cmt. 2–3. "Creating such false impressions is an abuse of the legal system that diminishes public confidence in the legal profession and in the fairness of the legal system as a whole." *Id.* cmt. 3. An attorney must be "exceptionally careful" when communicating a threat of criminal or disciplinary proceedings in the course of litigation. *See* Tex. Comm. on Prof'l Ethics, Op. 457, 51 Tex. B.J. 808, 808 (1988).

In this case, we do not substitute our judgment for the fact-finder's when reviewing the sufficiency of the evidence. Accordingly, the trial court's judgment is affirmed.


/s/    Ken Wise
Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

14

## APPENDIX A

Hello Bruce

I must tell you I was incredibly disturbed by your baseless allegations a few days ago that I, Mr. Quinlan and Ed Rothberg committed bcy fraud. Although it would not have surprised me if Mr. Oldenettel had done so--given his clear perjury a day or two earlier--I was frankly shocked that you were the lead architect of the foregoing baseless argument. I always had respect for you--whether we agreed or not--and I never would have believed stooping to this level (because y'all are obviously desperate about losing here) would have been your bailiwick.

The reason I am writing you is to advise you that unless, by noon on Monday, you announce in open court that you now realize that there was no factual or legal basis for your allegations, and that you are sorry for having made them and that you now withdraw them ENTIRELY. I plan to contact your superiors at Winstead and file a grievance against you and Winstead with the State Bar. There are other actions I am considering which are not yet appropriate to discuss. Please be aware that your allegations--which the court took as true because you are an officer of the court--resulted in a court finding of a prima facie case of crime-fraud against me in a PUBLIC record that anyone can access in the future. That is a humongous deal to an attorney who values his name and reputation.

If you do make the above statement--the language of which will have to be agreed upon--I will release you and Winstead from all potential liability in connection with the statement you made and will agree not to file a grievance against you and Winstead with the State Bar or related authorities.

I have not spoken to Mr. Quinlan about this email specifically, but if upon review of your allegations in the record, his name appears in the record, I suspect he may wish to do the same, which may be especially disconcerting to Winstead given the fact that John is a Winstead client and has paid Winstead around $100,000 in fees.

I am writing this personally to you (with copies to Mr. Yanochik and Mr. Quinlan) and not announcing it in open court or otherwise publicizing this because I am far more considerate and ethical than the lot of you are, and I want to give you the opportunity to fix this without disclosing the fact that I compelled you to do so. I normally would have reserved this communication for after trial but I can't do that because I want the above statement in the record before trial ends

I am giving you an opportunity you didn't give to me. Think about it carefully. I am always willing to lose fair and square (which this trial hasn't even come close to being, but that's another story) but when supposedly ethical attorneys stoop to levels inhabited usually only by crooked politicians, something has to be done.

Choose wisely.

Sincerely

Jack Yetiv