**George R. NEELY, Appellant,**

**v.**

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 14–08–00526–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 10, 2009.

Rehearing Overruled Dec. 3, 2009.

Jerald Grimes Molleston, Timothy R. Bersch, Houston, TX, Linda A. Acevedo, Austin, TX, for appellees.

Panel consists of Chief Justice HEDGES, and Justices YATES and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This appeal arises from an attorney disciplinary proceeding in which the trial court granted summary judgment on claims that the attorney violated Texas Disciplinary Rule of Professional Conduct 1.14(a), governing the safekeeping of others' property. The trial court entered a final judgment of disbarment. In nine appellate issues, the disbarred attorney challenges the trial court's jurisdiction as well as the trial court's granting of summary judgment, the admission of certain evidence, and various other aspects of the judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant George R. Neely was licensed to practice law in Texas. He maintained a trust account under the Interest on Lawyers Trust Account (IOLTA) program. Appellee the Commission for Lawyer Discipline (the "Commission") initiated a disciplinary action against Neely for violation of the Texas Disciplinary Rules of Professional Conduct. In its live petition, the Commission alleged that Neely violated the trust account provisions set forth in Rule 1.14(a) by commingling his own funds with clients' funds in his IOLTA trust account ("Trust Account"), by paying employee wages and other business and personal expenses from the same account, and by failing to preserve five years of records on the Trust Account.

George R. Neely, Rosenberg, TX, pro se.

The action stemmed from a grievance filed with the State Bar of Texas by Nee-

ly's former employee, Virginia Ploch. In her grievance, Ploch accused Neely of paying her wages and bonuses, Neely's office expenses, and Neely's household expenses from the Trust Account, which Ploch claimed was the same account in which Neely deposited clients' money. Ploch attached to the grievance copies of payroll checks and other checks written to Ploch and signed by Neely from the Trust Account (hereinafter the "Ploch Checks"), which Neely asserts Ploch stole from his office.

In the course of discovery, on January 12, 2004, the Commission requested production of all records of any trust accounts maintained by Neely for the period beginning December 1, 1998, and running through January 12, 2004, including statements and cancelled checks, among other things. Neely objected to the Commission's request, asserting attorney-client privilege and a number of other objections; Neely did not produce the requested documents. The Commission indicated that it would file a motion to compel production of the records if Neely did not comply with the request for production.

Shortly thereafter, on February 20, 2004, the Commission served a subpoena on Frost National Bank for records associated with the Trust Account. Neither party disputes that Neely did not receive notice of the Frost National Bank subpoena.[1] Frost National Bank complied and provided 1,462 pages of records pertaining to the Trust Account (hereinafter "Trust Account Records").[2] The Commission filed the Trust Account Records with the trial court on May 28, 2004, along with an affidavit of a Frost National Bank officer and custodian of records, Lisa Gonzales, under the business-records exception of Texas Rule of Evidence 902(10). The notice of filing associated with these records, in pertinent part, is provided below:

You are hereby notified that Petitioner, Commission for Lawyer Discipline has filed in the above-styled and numbered case certain business records of Frost National Bank, with an affidavit by Lisa Gonzales, Custodian of Records. These records will be offered in evidence during the trial of this case.

Pursuant to Rule 902(10)(a) of the Texas Rules of Evidence, these records will be made available to counsel for parties to the litigation for inspection and copying at the expense of the person desiring the copies.

A certificate of service to Neely accompanied the notice.

In June 2004 and July 2004, the Commission filed two other motions to compel Neely's production of records associated with the Trust Account. In an order dated April 19, 2007, the trial court granted the Commission's motions to compel, ordering Neely to provide a "full and complete response" to the Commission's request for production and interrogatories. Neely produced some records associated with the Trust Account. The record reflects that he admitted producing to the

---

1. The Commission, in serving the subpoena on Frost National Bank, operated under the belief that section 59.006 of the Texas Finance Code authorized the Commission to obtain the Trust Account Records by subpoena without notice to Neely. The trial court indicated at a hearing in October 2007, that the Finance Code did not authorize the Commission's conduct and that the Finance Code was inapplicable to the facts of this case.

2. The Commission indicated that the records obtained from Frost National Bank spanned a period of sixteen months from April 2001 to July 2002, but did not encompass the entire period of time for which records were requested of Neely, from December 1998 through January 2004.

Commission "IOLTA account records" for the period of April 2001 to July 2002.[3] Neely provided no other documents pertaining to the Trust Account for the requested time-period (December 1, 1998, to January 12, 2004).

The Commission moved for partial summary judgment on the Rule 1.14(a) claims.[4] In support of its motion, the Commission submitted the following exhibits:

- excerpts from the transcript of Neely's June 2007 deposition,

- copies of the front and back of cancelled checks signed by Neely and written to Ploch from the Trust Account for payroll, expenses, and bonuses,[5]

- two monthly financial statements from Neely's Trust Account Records, dated January 10, 2002, and February 11, 2002, and copies of the front and back of cancelled checks that are listed within the two statements,

- an affidavit and spreadsheet (prepared by accountant Tom Prude on behalf of Neely) pertaining to the Trust Account, and

- several documents filed with the trial court associated with discovery, including the Commission's request for production dated January 12, 2004, the trial court's April 19, 2007 order on the Commission's motion to compel, and Neely's supplemental response to the Commission's first request for interrogatories in which he listed "IOLTA account records" from April 2001 to July 2002, as items he produced to the Commission in response to the Commission's request for production.

According to the Commission's motion for partial summary judgment, Neely's deposition testimony and the other evidence established the following: (1) Neely did not separate his clients' funds from his personal funds within the Trust Account, his only trust account, during 2001 and 2002; (2) Neely acknowledged paying for numerous personal- and business-related expenses from this same trust account at Frost National Bank; and (3) Neely failed to preserve five years of records pertaining to the Trust Account as required by Rule 1.14(a).

In response, Neely objected to the Commission's evidence, claiming it was incompetent summary judgment evidence. Neely asserted that the Commission presented no evidence to support the allegations that he violated Rule 1.14(a). Neely submitted an affidavit and referred to excerpts from his deposition in an effort to establish the existence of material fact issues in order to preclude summary judgment. Neely argued for the exclusion of the Trust Account Records from the Commission's summary-judgment evidence on the

---

3. The Commission asserted that the documents Neely produced in his supplemental response were copies of the same Trust Account Records that the Commission had obtained by subpoena, filed with the court in 2004, and produced to Neely in the course of the proceedings. Consequently, the Commission amended its original petition to reflect the fact Neely also had violated another aspect of Rule 1.14(a), requiring an attorney to preserve five years of records on the Trust Account.

4. When the Commission amended its petition, the only remaining claims were under Rule 1.14(a); if the trial court granted the Commission's motion for partial summary judgment, then the trial court's ruling would be dispositive of the Commission's entire case against Neely.

5. The Commission claimed to have obtained these checks from the Trust Account Records. The record reflects that the checks submitted with the summary judgment evidence are not the same checks Ploch filed with her grievance.

grounds that the Commission failed to comply with the procedural rules in obtaining the Trust Account Records by subpoena without notice to him. Neely also argued that the exclusionary rule applied in this case, referring to the matter as "quasi-criminal" in nature, such that the improperly obtained Trust Account Records and "the documents and information contained in the documents stolen" by Ploch from Neely's office could not be used by the Commission for any purpose.

At a September 2007 hearing, the trial court considered the Commission's motion, but determined that the trial court first must resolve whether the Trust Account Records or the Ploch Checks should be excluded from evidence. The trial court took the Commission's motion under advisement and requested additional briefing from the parties regarding whether the Ploch Checks or the Trust Account Records should be excluded.

Neely filed a motion to suppress the Trust Account Records. Neely also sought to suppress and exclude all other evidence obtained by the Commission, alleging that the evidence was the "fruit of the poisonous tree" stemming from either the Ploch Checks or from the Trust Account Records. In addition, Neely moved for sanctions for discovery abuse on this basis.

The parties reconvened in October 2007, for the trial court's consideration of Neely's motion to suppress and the Commission's motion for partial summary judgment. The trial court ruled that the exclusionary rule did not apply to a civil disciplinary proceeding. The trial court determined that the Texas Finance Code, upon which the Commission relied in serving the subpoena on Frost National Bank, was not applicable to the matter. The trial court opined that the Commission did not necessarily follow the "right

statute" in obtaining the Trust Account Records by subpoena, but that the Commission would have been able to obtain the records sooner or later in discovery. In denying Neely's motion to suppress and motion for sanctions, the trial court ruled that the Trust Account Records would not be excluded, concluding that exclusion would not be a fair sanction. The trial court granted the Commission's motion for summary judgment, finding that the Commission had proved as a matter of law that Neely violated Rule 1.14(a).

The Commission submitted evidence for the trial court's consideration. In an effort to give Neely additional time to gather evidence, the trial court continued the hearing. After the continuance, Neely presented evidence and witnesses. The trial court ultimately entered a final judgment of disbarment against Neely.

## II. ISSUES AND ANALYSIS

### A. Is the trial court's judgment void because the trial court lacked jurisdiction over the disciplinary proceeding?

In his first issue, Neely challenges the trial court's jurisdiction to hear the disciplinary proceeding, claiming that the judgment is void because the Supreme Court of Texas and the trial judge did not comply with the procedural requirements set forth in Texas Rules of Disciplinary Procedure 3.02, 3.03, and 3.07. According to Neely, the record contains neither an order removing the original appointed judge, Judge Evans, nor an order appointing the replacement judge, Judge Robison, nor was any order filed with the Harris County District Clerk as required in Rule 3.02. Neely also claims that he was not served with a copy of the order appointing Judge Robison as required in Rule 3.03. Finally,

Neely complains that under Rule 3.07, the disciplinary action was not set for trial within 180 days after the petition was filed.

■ Under Rule 3.02, entitled "Assignment of Judge," the Supreme Court of Texas shall appoint a qualified judge or replacement judge to preside in a disciplinary proceeding. *See* TEX.R. DISCIPLINARY P. 3.02, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005). Contrary to Neely's assertions, the record in this case contains an order dated October 18, 2004, in which the Supreme Court of Texas appointed Judge Robison to preside over the disciplinary proceeding for cause number 2003–63182, the same trial cause number in the case at hand. This order is file-stamped by the Harris County District Clerk. Although Neely contends that the record contains no order removing Judge Evans, Rule 3.02 does not require a removal order in appointing a replacement judge. *See* TEX.R. DISCIPLINARY P. 3.02; *see also Wilson v. State*, 582 S.W.2d 484, 487 (Tex.Civ.App.-Beaumont, 1979, no writ.) (providing that despite the absence of written notation of recusement in record, procedure to substitute judges in a disciplinary matter was proper).

■ Rule 3.03, entitled "Filing, Service and Venue," provides that upon the appointment of a judge for a disciplinary proceeding, the respondent attorney "shall then be served" with a copy of the Supreme Court's appointing order. TEX.R. DISCIPLINARY P. 3.03, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005). Neely complains that he was not served with an order of the appointment, and the record does not indicate whether Neely was served with the order. Presuming without deciding that Neely was not properly served under Rule 3.03, any error would be harmless because the record reflects that Neely knew Judge Robison was to preside over the proceed-ing. *See Belt v. Comm'n for Lawyer Discipline*, 970 S.W.2d 571, 573–74 (Tex.App.-Dallas 1997, no pet.) (rendering harmless any error in which attorney was not served with order of appointment under Rule 3.03 because a letter in record reflected that the attorney was notified of the trial setting and the judge's appointment). The record contains a letter dated December 27, 2006, from Neely to Judge Robison. In the letter, Neely indicated he would be handling the matter before Judge Robison and requested a trial setting in August 2007. *See id.* Neely does not claim that he lacked actual notice of the appointment. *See id.* Therefore, Neely's arguments under Rule 3.03 are without merit. *See id.* (overruling a claim that a trial court lacked jurisdiction over a disciplinary proceeding for failure to abide by Rules 3.02 and 3.03).

■ Likewise, Neely's argument under Texas Rule of Disciplinary Procedure 3.07, entitled "Trial Setting," lacks merit. Even if we accept Neely's contention as true, Rule 3.07 is not mandatory in nature; rather, Rule 3.07 is directory. *See* TEX.R. DISCIPLINARY P. 15.05, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005); *Santos v. Comm'n for Lawyer Discipline*, 140 S.W.3d 397, 402 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Risker v. Comm'n for Lawyer Discipline*, 94 S.W.3d 625, 630 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Failure to comply with the time period set forth in Rule 3.07 does not result in the invalidation of an act or event by reason of noncompliance. *See* TEX.R. DISCIPLINARY P. 15.05; *Risker*, 94 S.W.3d at 630. Furthermore, failure to comply with Rule 3.07 does not mandate reversal of the judgment, particularly in the absence of an objection in the trial court by Neely on Rule 3.07 grounds. *See Risker*, 94 S.W.3d at 630. Therefore, noncompliance with Rule 3.07 does not invalidate a trial court's

jurisdiction. *See* TEX.R. DISCIPLINARY P. 15.05; *Favaloro v. Comm'n for Lawyer Discipline,* 13 S.W.3d 831, 836 (Tex.App.-Dallas 2000, no pet.). Accordingly, we overrule Neely's first issue.[6]

## B. Did the trial court err in granting the Commission's motion for partial summary judgment?

In issues two through five, Neely contends that summary judgment was improper based on the evidence. In support of his arguments, Neely complains that the Ploch Checks and Trust Account Records should have been excluded. Neely asserts that the evidence submitted to the trial court demonstrated that genuine issues of material fact remained so that summary judgment was improper.

### 1. Evidentiary Complaints

In issues two and five, Neely complains that the trial court should have excluded the Ploch Checks and the Trust Account Records. Neely also asserts, as part of his third issue, that the trial court committed error in granting the summary judgment over his objections to the Commission's summary judgment evidence.

■ A decision to admit or exclude evidence rests within the sound discretion of the trial court. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000) (per curiam); *McIntyre v. Comm'n for Lawyer Discipline,* 247 S.W.3d 434, 442 (Tex.App.-Dallas 2008, pet. denied). A trial court abuses its discretion when a decision is arbitrary, unreasonable, or without refer-

ence to guiding principles. *See Carpenter v. Cimarron Hydrocarbons Corp.,* 98 S.W.3d 682, 687 (Tex.2002); *Honeycutt,* 24 S.W.3d at 360. A reviewing court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling and will not disturb the trial court's ruling absent an abuse of discretion. *Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.,* 267 S.W.3d 454, 465 (Tex.App.-Houston [14th Dist.] 2008, pet. filed). Moreover, a reviewing court will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused rendition of an improper judgment. *See* TEX.R.APP. P. 44.1; *Wal–Mart Stores, Inc. v. Johnson,* 106 S.W.3d 718, 723 (Tex.2003); *McIntyre,* 247 S.W.3d at 442.

### The Ploch Checks

■ In his second issue, Neely complains that the trial court erred in admitting the Ploch Checks as "stolen evidence." He claims that the manner in which Ploch obtained the checks, the documents the Commission used to commence this suit against him, created a genuine issue of material fact precluding summary judgment. Presuming, without deciding, that Ploch stole the Ploch Checks from Neely's office, as Neely contends, the copies of checks that Ploch gave to the Commission with her grievance were not the same documents included in the Commission's summary judgment evidence.

At the September 2007 hearing, the Commission indicated that it obtained from the Trust Account Records at Frost

---

**6.** Without citing any authority, Neely asserts that failure to comply with the procedural requirements of the Texas Disciplinary Rules of Procedure 3.02, 3.06, and 3.07 deprived him of constitutional due process rights, including the right to object to the appointment of Judge Robison and seek that judge's removal. At trial, Neely did not attack the constitutionality of whether non-compliance with these rules abridged his due process rights. Neely raises this issue and his complaints under Rules 3.02, 3.06, and 3.07 for the first time on appeal. Any arguments regarding Neely's due process rights were waived when Neely failed to raise these arguments in the trial court. *See* TEX R.APP. P. 33.1(a); *Risker,* 94 S.W.3d at 630; *Belt,* 970 S.W.2d at 574.

National Bank copies of cancelled checks that Neely wrote to Ploch. The Commission attached these documents to the summary-judgment motion. These documents show the front and back of the cancelled checks. Because the checks related only to Ploch, the Commission separated these checks from the other summary-judgment evidence. The record reflects that the copies of checks attached to the Commission's summary-judgment motion were not the same copies of checks attached to Ploch's initial grievance with the State Bar of Texas.[7] The trial court indicated at the September 2007 hearing that the Commission, in moving for summary judgment, had not submitted evidence from Ploch nor had the Commission relied on any evidence that appeared to have been stolen from Neely's office. Neely has provided no legal authority in support of this issue, and Neely's arguments for exclusion lack merit because the checks of which he complains were not part of the evidence upon which the trial court granted summary judgment.[8] *See Risker,* 94 S.W.3d at 635 (overruling a party's objection to the admission of evidence because the party failed to demonstrate that the admission of the evidence probably caused the rendition of an improper judgment). Therefore, we overrule Neely's second issue.

### The Trust Account Records

Under his fifth issue, Neely complains that the trial court should not have consid-

ered the Trust Account Records because these records are protected by Neely's attorney-client privilege and a constitutional privacy interest. Neely also contends that the trial court should not have considered the Trust Account Records because the Commission improperly obtained them from Frost National Bank by subpoena without notice to him.

We first address Neely's preservation of error in the trial court regarding these complaints. The record does not contain a ruling by the trial court on the summary-judgment objections in which Neely asserted these complaints. Therefore, Neely has waived these summary-judgment objections. *See Dolcefino v. Randolph,* 19 S.W.3d 906, 925 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (involving a party who failed to secure a ruling on his hearsay objections to summary judgment evidence). However, Neely did assert these objections in response to the Commission's motion to compel production of the documents. The trial court overruled these discovery objections and compelled production. In response, Neely produced the Trust Account Records. Therefore, Neely preserved error as to these complaints, and, accordingly, we review whether the trial court abused its discretion in overruling these objections and compelling production. *See Johnson v. Davis,* 178 S.W.3d 230, 242 (Tex.App.-Houston [14th

---

**7.** The Ploch Checks were not part of the summary judgment evidence. However, the Ploch Checks were admitted at the October 2007 hearing along with Ploch's initial grievance to the State Bar and an affidavit by Ploch. In the affidavit, Ploch denied stealing any records from Neely's office. The Commission offered these documents to refute Neely's allegation that the Ploch Checks were stolen.

**8.** Neely asserts that the Commission should have been estopped from relying on the checks because, he claims, the Ploch Checks

should have been excluded subject to a trial court's order entered prior to the initiation of this suit. However, the trial court order to which Neely cites stemmed from a prior proceeding between Ploch and Neely. The Commission was not a party to that action. On this basis, Neely's argument lacks merit. *See Acevedo v. Comm'n for Lawyer Discipline,* 131 S.W.3d 99, 106 (Tex.App.-San Antonio 2004, pet. denied); *Richards v. Comm'n for Lawyer Discipline,* 35 S.W.3d 243, 249 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

Dist.] 2005, pet. denied) (providing that a trial court's ruling on discovery is reviewed under an abuse-of-discretion standard).

■■■ Neely objected to production of these records, claiming it would violate a purported constitutional right to privacy that Neely claimed in these records. However, there are no constitutional rights to privacy affected by disclosure of banking records or in personal financial records. *See United States v. Miller*, 425 U.S. 435, 442, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976) (involving subpoena of bank records served on a third-party); *In re Manion*, No. 07–08–00318–CV, 2008 WL 4180294, at *2 (Tex.App.-Amarillo Sept. 11, 2008, no pet.); *see also State v. Hardy*, 963 S.W.2d 516, 524 (Tex.Crim. App.1997) (op. on reh'g) (providing that a person has no reasonable expectation to privacy in personal information entrusted to a third-party and likening no expectation of privacy in medical information in that matter to having no expectation of privacy in bank records as in *Miller*); *Miller v. O'Neill*, 775 S.W.2d 56, 59 (Tex. App.-Houston [1st Dist.] 1989, no writ) (providing that despite inevitable intrusion, discovery of financial records is permitted and is not an invasion of privacy). Financial statements and deposit slips contain information that is voluntarily conveyed to banks and exposed to bank employees in the ordinary course of business. *Miller*, 425 U.S. at 442, 96 S.Ct. at 1624. Likewise, checks are not confidential communications, but rather negotiable instruments used in commercial transactions. *Id.* Therefore, the trial court did not abuse its discretion in overruling this discovery objection.[9]

■■■ The attorney-client privilege shields "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Tex.R. Evid. 503(b)(1). The Trust Account Records do not contain any confidential attorney-client communications. *See id.; Kelly v. Gaines*, 181 S.W.3d 394, 419 (Tex. App.-Waco 2005), *reversed on other grounds*, 235 S.W.3d 179 (Tex.2007) (determining that no attorney-client privilege applies to financial information). Therefore, the trial court did not abuse its discretion in overruling Neely's discovery objection based on the attorney-client privilege.

■■■ Neely also objected to discovery on the ground that the Commission previously had obtained the Trust Account Records in an improper manner—by subpoena without notice to him. Neely objected and asserted that the trial court should have denied discovery of the Trust Account Records as a sanction for discovery abuse because the Commission failed to abide by procedural rules in obtaining the records. The Commission acknowledged at the September 2007 hearing that it did not send Neely notice of the subpoena. For purposes of our analysis, we presume without deciding that the Commission should have sent Neely notice of the subpoena and failed to do so.

Neely cites Texas Rule of Civil Procedure 21b, entitled "Sanctions for Failure to Serve or Deliver Copy of Pleadings and Motions," as operating to exclude the Trust Account Records as a sanction for the Commission's failure to provide notice of the subpoena. Rule 21b provides that "if any party fails to serve on or deliver to the other parties a copy of any pleading, plea, motion, or other application to the

9. Although Neely asserts that the Commission violated several constitutional due process rights, Neely has cited only authority in support of a privacy interest in the Trust Account Records. Neely has neither identified nor indicated what other constitutional due process rights could have been violated by the Commission's conduct.

court for an order in accordance with Rule 21 and 21a, the Court may in its discretion, after notice and hearing, impose an appropriate sanction available under Rule 215.2(b)." Tex.R. Civ. P. 21b. Rule 21b is not applicable on these facts because the Commission's subpoena is not a pleading, plea, or motion, nor is the subpoena an "application to the court for an order." *See id.*

For the same reason, we find no merit in Neely's arguments for exclusion as a sanction under Texas Rules of Civil Procedure 215.2, governing sanctions for failure to comply with an order or discovery request, and 215.5, governing sanctions for failure of a party to attend or to serve a subpoena. Neely argues that by application of Rule 21b, the Trust Account Records should be excluded under Rule 215.2(b)(4) as a sanction. Rule 215.2(b), entitled "Sanctions by Court in which Action is Pending," provides that "[i]f a party . . . fails to comply with proper discovery requests or to obey an order to provide or permit discovery . . ., the court . . . may, after notice and hearing, make such orders in regard to the failure as are just. . . ." Tex.R. Civ. P. 215.2(b). Subsection (4) specifically authorizes a trial court to enter an order refusing to allow a disobedient party to support a designated claim or prohibiting a party from introducing certain matters into evidence. *See* Tex.R. Civ. P. 215.2(b)(4). This rule, however, is inapplicable on these facts because the Commission's conduct, in obtaining the Trust Account Records by subpoena without notice, is not a failure to comply with any discovery request or a failure "to obey an order to provide or permit discovery" as contemplated by Rule 215.2(b), and Neely has not

explained in what manner the Commission's conduct could be construed as such. *See id.*

Similarly, Neely cites Rule 215.5 as warranting the sole sanction of mandatory exclusion of evidence for failure to provide complete responses to discovery requests. Rule 215.5, as cited by Neely, is not applicable because that provision involves failure to give notice of taking an oral deposition. *See* Tex.R. Civ. P. 215.5. Neely cites *F & H Invs. Inc. v. State,* 55 S.W.3d 663 (Tex.App.-Waco 2001, no pet.), for support that mandatory exclusion is required in this case; however, that case is not applicable to these facts because it involved exclusion of evidence for a party's failure to respond to a discovery request under Rule 193.6. *See id.* at 668 (analyzing facts under Rule 193.6, for failure to respond or supplement a discovery response, and not under Rule 215 for sanctions of discovery abuse). The conduct at issue is not a failure to respond to a discovery request, and Neely has not explained in what manner the conduct would qualify as such. For the same reason, the other cases,[10] as cited by Neely, are also inapplicable on these facts.

 Neely argues that "death penalty" sanctions for the Commission's conduct were warranted. A trial court's imposition of an available sanction is left to the sound discretion of the trial court, not to be disturbed absent an abuse of discretion. *See TransAmerican Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991) (orig. proceeding). Severe sanctions, such as exclusion of the Trust Account Records as Neely requested, that prevent a trial

---

**10.** *See Matagorda County Hosp. Dist. v. Burwell,* 94 S.W.3d 75 (Tex.App.-Corpus Christi 2002), *rev'd on other grounds,* 189 S.W.3d 738 (Tex.2006) (per curiam) (involving exclusion of evidence for failure to timely supplement a

discovery response under Rule 193.6(a)); *Villegas v. Tex. Dep't of Transp.,* 120 S.W.3d 26 (Tex.App.-San Antonio 2003, pet. denied) (involving exclusion of expert affidavit for a party's failure to timely disclose the material).

court's decision on the merits of a case cannot be justified absent a showing of a party's flagrant bad faith or callous disregard for the discovery rules, neither of which has been shown on this record. *See TransAmerican*, 811 S.W.2d at 918. Neely cites a number of cases as supporting sanctions for discovery abuse, but none involve a party's failure to give notice when serving a subpoena on a non-party for discovery.[11]

Presuming that the Commission obtained the Trust Account Records by subpoena without notice to Neely, Neely did receive notice and an opportunity to object and be heard regarding the Commission's request for production of these records as early as June 2004, when he first responded to the Commission's motion to compel. In response to the Commission's motion to compel, Neely did not assert any valid objection to the production of records. Therefore, any lack of notice and opportunity to be heard when the records were first obtained did not result in any harm to Neely.

For the reasons stated above, the trial court did not abuse its discretion in overruling Neely's objections to the Commission's motion to compel or by declining to impose a "death-penalty" discovery sanction.

### Complaints Under the Exclusionary Rule

 Neely claims, as part of his fifth issue, that the trial court should have excluded from the evidence both the Ploch Checks and Trust Account Records under the "civil equivalent" of the "fruits of the poisonous tree" doctrine. The exclusionary rule, as codified in the Texas Code of Criminal Procedure, is inapplicable to Neely's case because the Code of Criminal Procedure pertains to criminal actions. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005); *Vara v. Sharp*, 880 S.W.2d 844, 847, 851 (Tex.App.-Austin 1994, no writ) (providing that evidence unconstitutionally seized by law enforcement officers may not be admitted in a criminal proceeding or some quasi-criminal civil proceedings). Some courts have indicated that the exclusionary rule may apply in civil cases when the proceedings are quasi-criminal in nature. *See Vara*, 880 S.W.2d at 847, 851. *But see Pine v. State*, 921 S.W.2d 866, 872 (Tex.App.-Houston [14th Dist.] 1996, writ dism'd w.o.j.) ("The applicability of the exclusionary rule in civil cases, however, is uncertain."). However, the Supreme Court of Texas has ruled that lawyer-disciplinary proceedings are civil in nature and not quasi-criminal. *See Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 438 (Tex.1998) (providing that disciplinary proceedings are civil in nature); *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 657 n. 1

---

11. *See Best Indus. Uniform Supply Co. v. Gulf Coast Alloy Welding, Inc.*, 41 S.W.3d 145, 148 (Tex.App.-Amarillo 2000, pet. denied) (holding that a "sudden death" sanction was excessive in response to a party's failure to amend a witness list with a substituted witness because it destroyed the trial court's opportunity to rule on the merits of the case); *Schein v. Am. Rest. Group Inc.*, 852 S.W.2d 496, 496–97 (Tex.1993) (per curiam) (involving a party's failure to comply with a discovery request). Neely has provided no relevant authority to support the mandatory exclusion of the Trust Account Records or the imposition of a "death penalty" sanction on the facts presented in this case. Our own independent research uncovered a case with similar facts in which the trial court levied a fine for discovery abuse. *See Sanchez v. Rodriguez*, No. 13-00-00059-CV, 2001 WL 34616782, at *10–11 (Tex.App.-Corpus Christi Oct. 4, 2001, no pet.) (not designated for publication) (providing that a fine levied as a sanction was not excessive for discovery abuse involving a party who failed to provide notice of a subpoena served on a bank in attempting to obtain an attorney's IOLTA account records).

(Tex.1989) (per curiam) (disapproving of lower court's reference to lawyer disciplinary actions as being "quasi-criminal in nature"). Therefore, any arguments that the exclusionary rule applies in this attorney-disciplinary matter have no merit.[12] *See Baxter v. Tex. Dep't Human Res.,* 678 S.W.2d 265, 267 (Tex.App.-Austin 1984, no pet.) (declining to apply the exclusionary rule to a civil case involving termination of parental rights under the Texas Family Code); *see also Benton,* 980 S.W.2d at 438. For each of the reasons discussed above, we overrule Neely's fifth issue.

### The Commission's Evidence in Support of its Motion for Partial Summary Judgment

 As part of his third issue, Neely claims that the trial court erred in granting summary judgment over his objections to the summary-judgment evidence because the Commission's evidence is incompetent.[13] Neely alleges that the Commission pointed to no evidence, affidavits, or other witness testimony and that the attached summary-judgment exhibits are not authenticated by affidavit or otherwise self-authenticated. Neely asserted these same objections in response to the Commission's motion for partial summary judgment; however, in order to preserve error, it was incumbent upon Neely to obtain a ruling or a refusal to rule on these objections. *See Dolcefino,* 19 S.W.3d at 925. The record does not contain a ruling by the trial court on the summary-judgment objections in which Neely asserted these complaints.[14] Therefore, Neely

---

12. For support, Neely points to the case of *Schenck v. Ebby Halliday Real Estate, Inc.,* 803 S.W.2d 361, 372 (Tex.App.-Fort Worth 1990, no writ). However, we distinguish that case on the basis that the *Schenck* court determined that the appellants could have obtained the information by serving a request for production and did not; however, the Commission in this case did serve the request for production and attempted to obtain the requested information. *See id.* We also distinguish *Vara v. Sharp,* 880 S.W.2d 844, 847 (Tex.App.-Austin 1994, no writ), upon which Neely relies, from the case under review on the basis that the civil proceeding in *Vara* related to penal use of a tax statute and was quasi-criminal in nature, unlike the disciplinary case at hand. *See id.* We distinguish *Day & Zimmermann, Inc. v. Strickland,* 483 S.W.2d 541 (Tex.App.-Texarkana 1972, writ ref'd n.r.e), as cited by Neely, on the basis that the records at issue in this case were made available to Neely when they were filed in the trial court in May 2004, unlike the records in *Day & Zimmermann,* upon which an expert report in that case was based and determined to be inadmissible evidence. *See id.* at 546 (involving objection to expert report as hearsay spawned and based upon hearsay from records not made available to other litigants).

13. To the extent that Neely claims the trial court erred in admitting (in his fifth issue) and in considering (in part of his third issue and fifth issue) the Trust Account Records because the records were improperly obtained without notice to him, we have determined the trial court did not abuse its discretion in admitting the Trust Account Records. Therefore, the Commission's summary-judgment evidence has not changed, and the Trust Account Records, as summary-judgment evidence, were properly considered by the trial court.

14. Nonetheless, even if Neely had preserved error, he would not prevail on his objections to the summary-judgment evidence. The Commission's evidence consisted of Neely's deposition testimony and other exhibits, each of which Neely discussed in the deposition. Deposition transcripts and the exhibits discussed in the deposition need no authentication and constitute proper summary judgment evidence. *See Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000) (per curiam) (providing that an interrogatory answer discussed in excerpts of deposition, which was attached to summary judgment motion as evidence, was part of the summary judgment record and was competent summary judgment evidence when it became a deposition exhibit); *see also McConathy v. McConathy,* 869 S.W.2d 341, 342 (Tex.1994) (per curiam).

waived these summary-judgment objections. *See id.*

### 2. The Commission's Motion for Partial Summary Judgment

In his fourth issue and in part of his third issue, Neely contends that the trial court improperly granted summary judgment because genuine issues of material fact remain based on the evidence he presented and that the Commission's evidence did not demonstrate that Neely violated Rule 1.14(a).

■■■ Summary-judgment orders in attorney-disciplinary appeals are governed by traditional summary-judgment standards. *See Fry v. Comm'n for Lawyer Discipline*, 979 S.W.2d 331, 333–34 (Tex. App.-Houston [14th Dist.] 1998, pet. denied). In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000) (per curiam). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007) (per curiam). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

Rule 1.14(a), entitled "Safekeeping Property," is set forth below in pertinent part:

> A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property.... Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(a), *reprinted in* TEX. GOV'T CODE ANN,, tit. 2, subtit. G app. A–1 (Vernon 2005).

■■■ In its motion for partial summary judgment, the Commission alleged the following:

- Neely failed to keep his funds separate from his clients' funds;
- Neely paid employee wages and business and personal expenses from the same account; and
- Neely failed to preserve five years of records generated in regard to his Trust Account.

As evidence in support of the motion, the Commission attached, among other things, excerpts from Neely's deposition and the Trust Account Records. This evidence demonstrated that Neely's only trust account for the years of 2001 to 2002 was an IOLTA account in his name at Frost National Bank. From this account, Neely paid business-related expenses, such as Ploch's salary and bonuses as well as personal expenses including auto repair, utilities, groceries, personal taxes, property taxes, and charitable donations to churches. The checks attached as summary-judgment evi-

dence and discussed in Neely's deposition were written by Neely during this time period for numerous personal- and business-related expenses. *See Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 680 (Tex.App.-San Antonio 1998, no pet.) (concluding evidence was sufficient to support a determination that an attorney violated Rule 1.14(a) trust provisions by writing checks for personal and office expenses from a joint account shared with a client). Neely confirmed in his deposition that he kept money in the account and paid his personal taxes from that account. The Trust Account Records also show that Neely deposited personal funds into the Trust Account, including a gift from a family member for Neely's son and a check payable to Neely and his wife from a title company.

The Commission also attached an affidavit and spreadsheet prepared by accountant Tom Prude, who was hired by Neely. The Prude affidavit expressly provides in relevant part,

> Accordingly, it is my professional opinion that the funds due clients from Mr. Neely's Iolta account during the time periods identified by the Iolta bank account records received from the Commission for Lawyer Discipline, other than Mr. Neely and his wife, were never commingled such that they were not available to the clients within a reasonable period of time after they were deposited into Mr. Neely's Iolta account and that the Balance [sic] in Mr. Neely's Iolta account never dropped below the total sums of monies he owed any client at any time until the clients negotiated their checks given to them by Mr. Neely.

Although Neely points to language in the Prude affidavit as supporting his argument that he did not commingle funds, Neely's interpretation of the affidavit is unsupportable. In the affidavit, Prude opines that no commingling occurred because "the funds due clients from Mr. Neely's Iolta account" were not commingled such that the funds "were not available to the clients within a reasonable period of time after they were deposited into Mr. Neely's Iolta account." The affidavit also indicates that no commingling occurred because "the Balance [sic] in Mr. Neely's Iolta account never dropped below the total sums of monies he owed any client at any time until the clients negotiated their checks given to them by Mr. Neely." Neither opinion in the Prude affidavit, upon which Neely relies, refutes the Commission's allegation that Neely violated Rule 1.14(a)'s trust-account provisions by failing to keep his personal funds separate from client funds within the same Trust Account or by failing to preserve the Trust Account Records for five years. *See Fry*, 979 S.W.2d at 336.

The spreadsheet prepared by Prude reflects money in the Trust Account from April 4, 2001 through May 8, 2002. The spreadsheet contains a column identified as "Total Funds Due Clients," in which the amount shown represents funds belonging to clients. Neely confirmed in his deposition that this column represents funds due to clients other than Neely or his wife.[15] The amount in this column remained constant at $9,543.00 from November 15, 2001 to February 7, 2002. Neely confirmed in deposition that on November 15, 2001, $259,435.43 in the Trust Account belonged to him "and/or" his wife. However, another column identified as "Total Funds in the

15. Neely has indicated that he is his own client. We address this argument in more detail below.

Account" reflected that during the same period, the amount of total funds in the account decreased by $173,481.96. The checks and financial statements, attached as summary-judgment evidence, show that during this same time period, Neely signed numerous checks for business and personal expenses from the Trust Account. On this basis, we conclude the Commission conclusively proved that Neely violated Rule 1.14(a) by failing to keep his funds separate from client funds in the Trust Account and that Neely deposited personal funds into the Trust Account and paid for personal and business-related expenses from the Trust Account. *See* TEX. DISCI-PLINARY R. PROF'L CONDUCT 1.14(a) (providing that a lawyer's personal property should be kept separate from property belonging to clients); *Fry*, 979 S.W.2d at 335.

 Furthermore, the Commission's evidence establishes that Neely failed to maintain records for the Trust Account for five years as required by Rule 1.14(a). In deposition, Neely admitted he did not have any records dating to periods earlier than the years 2000 and 2001 and attributed this lack of records to flooding or to Ploch's alleged theft of documents. More-over, the Trust Account Records Neely produced in response to the Commission's discovery request spanned only the period from April 2001 to July 2002; he did not produce any other Trust Account Records even though the Commission requested records through January 2004. This evidence conclusively shows that Neely did not preserve records on the Trust Account for five years as required by Rule 1.14(a). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(a).

Once a movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to raise a genuine fact issue precluding summary judgment. *See Fry*, 979 S.W.2d at 335. Because the Commission established its right to judgment as a matter of law, the burden then shifted to Neely to adduce evidence raising a fact issue precluding summary judgment. *Id.* at 336.

Neely claims to have submitted evidence that refuted the Commission's allegations that he violated Rule 1.14(a) or established the existence of material fact.[16] For sup-port, Neely points to his affidavit and ex-cerpts from his deposition in which he asserts that he held money belonging to himself, his wife, and son as his clients in the Trust Account. Even if Neely consid-ered himself and his family members as clients, evidence of this belief does not raise a fact issue as to whether Neely kept personal money or property separate from clients' funds in the same Trust Account.[17] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(a); *Fry*, 979 S.W.2d at 336 (providing that evidence that raises only conclusions does not raise a fact issue). Rather, Nee-ly's stated belief strengthens the Commis-sion's position. *See Fry*, 979 S.W.2d at 336. Neely also points to his deposition testimony in which he stated that he and his wife had an agreement to disburse the

16. Neely points to parts of his deposition as supporting his claims. However, some of the excerpts to which Neely refers were not at-tached to his response to the Commission's motion for partial summary judgment nor were the excerpts part of the Commission's evidence. We cannot consider evidence that was not before the trial court. *See* TEX.R. CIV P. 166a(d). Therefore, this evidence does not raise a fact issue nor operate to defeat the Commission's evidence. *See* TEX.R. CIV. P. 166a(d).

17. Neely has provided no authority support-ing an argument that he may keep personal funds in the same account as "other" clients' funds even if he considers himself to be his own client.

money at her discretion. Rule 1.14(a) addresses the manner in which an attorney is required to keep funds pending disbursement and expressly prohibits commingling of funds even with client consent.[18] *See* Tex. Disciplinary R. Prof'l Conduct 1.14(a); *Brown,* 980 S.W.2d at 680 (rejecting argument under Rule 1.14(b) that a client consented to commingling when considering lack of express language allowing consent to commingle in rules, the state of the record, and the underlying policies prohibiting commingling). Neely's evidence in this regard does not raise a genuine issue of material fact that would preclude the Commission's right to summary judgment. *See Fry,* 979 S.W.2d at 337.

Neely also claims to have raised a fact issue involving his failure to preserve records on the Trust Account for the requisite amount of time. Neely points to his deposition testimony, in which he acknowledged that he produced only the Trust Account Records for 2001 and 2002 because he "looked and those were the only things [he] could find." Neely admitted in deposition that he did not have any other documents "beyond that" time period—meaning "earlier than 2000 or 2001." Neely denied in deposition having any documents "earlier than 2000 or 2001" because the original documents either were removed by Ploch or destroyed in a flood that occurred sometime between the years 2000 and 2002. Although the information arguably may have raised a factual dispute for the years 2000 and 2001 and the previous years, the factual dispute does not defeat Neely's failure to retain records for the subsequent years when the Commission's request for records spanned the time period from December 1998 to January 2004. Neely presented no evidence that he lost the Trust Account Records in the flood waters, but even if we were to presume that this were true, Neely presented no records or statements from the Trust Account for the years following the alleged flooding through 2004. To the contrary, the deposition evidence supports a conclusion that he did not preserve the Trust Account Records as required by Rule 1.14(a). *See id.* Neely has raised no genuine issues of material fact by this evidence. *See id.*

The Commission's evidence supports a determination that Neely commingled his personal funds with those of his clients in the Trust Account in violation of Rule 1.14(a). *See* Tex. Disciplinary R. Prof'l Conduct 1.14(a); *Brown,* 980 S.W.2d at 680. Furthermore, the Commission's evidence established that Neely failed to preserve the Trust Account Records for five years as required by Rule 1.14(a). Tex. Disciplinary R. Prof'l Conduct 1.14(a); Tex.R. Disciplinary P. 1.06(V)(1) *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon 2005). No genuine issues of material fact exist regarding whether Neely committed professional misconduct in violation of Rule 1.14(a).

---

**18.** Neely argues that Rule 1.14 authorizes an attorney to use discretion in disbursing funds from an IOLTA account. We construe this argument to be part of his fourth issue in which he claims that the trial court incorrectly applied the law. Rule 1.14(a) expressly prohibits commingling of funds-even funds pending disbursement. *See* Tex. Disciplinary R. Prof'l Conduct 1.14(a); *Brown,* 980 S.W.2d at 680 (rejecting similar argument under Rule 1.14(b)). Although Neely points to Continuing Legal Education materials in the record that he submitted to the trial court regarding the meaning of the terms "shall" and "should," we do not consider these materials because they were submitted in December 2007, after the trial court granted the Commission's motion for partial summary judgment. *See Valores Corporativos, S.A. de C.V. v. McLane Co.,* 945 S.W.2d 160, 162 (Tex.App.-San Antonio 1997, writ denied) (providing that evidence filed after signing summary judgment is not part of the record).

*See Fry,* 979 S.W.2d at 336 (holding that attorney did not raise genuine issue of material fact to preclude summary judgment). The Commission's evidence established its entitlement to judgment as a matter of law. *See id.* Accordingly, we must affirm the trial court's summary judgment holding that Neely committed professional misconduct because he violated a disciplinary rule. *See Cluck v. Comm'n for Lawyer Discipline,* 214 S.W.3d 736, 740 (Tex.App.-Austin 2007, no pet.). We therefore overrule Neely's issues three and four.

**C. Did the trial court abuse its discretion in entering a final judgment of disbarment?**

In his eighth issue, Neely asserts that the trial court's order of disbarment is excessive and not warranted under the circumstances. A trial court has broad discretion to determine whether an attorney who is guilty of professional misconduct should be reprimanded, suspended, or disbarred. *State Bar of Tex. v. Kilpatrick,* 874 S.W.2d 656, 659 (Tex.1994) (per curiam); *Kaufman v. Comm'n for Lawyer Discipline,* 197 S.W.3d 867, 878, (Tex.App.-Corpus Christi 2006, pet. denied); *see* TEX.R. DISCIPLINARY P. 2.15, 3.03, 3.16, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A-1 (Vernon 2005). An appellate court should reverse the trial court's decision only if an abuse of discretion is shown. *Eureste v. Comm'n for Lawyer Discipline,* 76 S.W.3d 184, 202 (Tex.App.-Houston [14th Dist.] 2002, no pet.). A trial court abuses its discretion only if it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Id.*

In determining the appropriate sanction for attorney misconduct, a trial court considers the following factors: (1) the nature and degree of the professional misconduct, (2) the seriousness of and the circumstances surrounding the misconduct, (3) the loss or damage to clients, (4) the damage to the profession, (5) the assurance that those who seek legal service in the future will be insulated from the type of misconduct found, (6) the profit of the attorney, (7) the avoidance of repetition, (8) the deterrent effect on others, (9) the maintenance of respect for the legal profession, (10) the trial of the case, and (11) other relevant evidence considering the attorney's personal and professional background. *Kilpatrick,* 874 S.W.2d at 659; *Curtis v. Comm'n for Lawyer Discipline,* 20 S.W.3d 227, 235 (Tex.App.-Houston [14th Dist.] 2000, no pet.). An attorney's disciplinary record is admissible on the issue of the appropriate measure of discipline to be imposed. TEX.R. DISCIPLINARY P. 3.10, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A-1 (Vernon 2005); *Musslewhite v. State Bar of Tex.,* 786 S.W.2d 437, 445 (Tex.App.-Houston [14th Dist.] 1990, writ denied). A trial judge is obligated to determine punishment based on these guidelines. *Curtis,* 20 S.W.3d at 234-35.

In light of these guiding principles, we cannot conclude the trial court abused its discretion in ordering the sanction of disbarment. The evidence supports a determination that Neely violated the trust-account provisions of Rule 1.14(a). Among an attorney's foremost ethical obligations is the proper handling of clients' funds and trust accounts. *See Brown,* 980 S.W.2d at 680. Moreover, Neely's failure to produce the Trust Account Records in response to proper discovery requests and the trial court's order is a particularly relevant fact weighing heavily against him. *See Minnick v. State Bar of Tex.,* 790 S.W.2d 87, 93 (Tex.App.-Austin 1990, writ denied) (weighing same factor in determining disbarment issue). Neely's lengthy

disciplinary record began in 1993, with a private reprimand for failing to respond to a request for information, and progressed through 2005, with a three-year partially-probated sentence for numerous advertising violations. Thus, on this record, the trial court did not abuse its discretion in entering the final judgment of disbarment. *See Kaufman,* 197 S.W.3d at 879. Therefore, we overrule Neely's eighth issue.

**D. Did the trial judge commit error by considering purported ex parte communications and by not recusing himself from the disciplinary proceedings on this basis?**

 Neely's seventh issue and part of his sixth issue pertains to a letter that Neely refers to as an "ex parte communication" from Ploch to the trial judge. Neely complains in his sixth issue that the trial judge committed error in considering this letter. Neely asserts in a seventh issue that the trial judge should have recused himself for inappropriately considering the letter from Ploch that purportedly was sent to the judge's chambers between the September 10 and October 17 hearings.

Because Neely withdrew his motion to recuse against the trial judge on the basis of the alleged ex parte communications, Neely has waived his complaint as to his seventh issue. *See* TEX.R.APP. P. 33.1(a); *see, e.g., Watson v. Johnson,* No. 01–99–00281–CV, 2001 WL 204736, at *2 (Tex. App.-Houston [1st Dist.] Mar. 1, 2001, no. pet) (involving party who withdrew motion to recuse and waived complaint on appeal about the trial court's error by not obtaining an adverse ruling); *see also Broussard v. State,* No. 05–99–01039–CR, 2000 WL 1612152, at *1 (Tex.App.-Dallas Oct. 30, 2000, pet. ref'd) (involving a party who failed to pursue or obtain a ruling on any

motion to disqualify a judge). Therefore, we overrule Neely's seventh issue.

Regarding his sixth issue, we note that the record reflects the letter was not admitted into summary-judgment evidence, and therefore the letter was not part of the trial judge's consideration in this case. *See Risker,* 94 S.W.3d at 635 (overruling a party's objection to the admission of evidence because the party failed to demonstrate that the admission of the evidence probably caused the rendition of an improper judgment). The letter of which Neely complains appears in the record only as an exhibit to a copy of papers filed in Neely's federal action. The record does not support Neely's contention that the trial court ever considered the letter from Ploch. *See Meachum v. Comm'n for Lawyer Discipline,* 36 S.W.3d 612, 616 (Tex. App.-Dallas 2000, pet. denied) (involving a complaint that the trial court improperly considered admitted evidence). Contrary to Neely's assertions, the record reflects that at a proceeding in June 2008, the trial judge made the following remarks about the letter from Ploch:

[TRIAL JUDGE]: Remind me, was the motion of recuse that I supposedly looked at some kind of letter from Ms. Ploch?

[COMMISSION]: That is correct, Your Honor.

[TRIAL JUDGE]: That's what I thought it was.

[COMMISSION]: There was a letter that had been sent by the lady in October.

[TRIAL JUDGE]: And I'd like to just for the record, I'd like the appellate court to know in case it gets there, in my office I've got my staff. Any time I get an ex parte in a case it goes into the file and I don't see it and that's what happened with this one. I [have] never seen it.

First I heard of it when I saw this motion of recusal, so I have never seen any letter from that lady. I do remember she was at several of the hearings, but I've never talked with her or had any communication.

The record does not support Neely's contention that the trial court considered the letter.

■■■■■ We also construe Neely's sixth issue to encompass a complaint that the trial judge (Robison) engaged in ex parte communication with another judge (Ramsay) concerning a prior disciplinary hearing involving Neely. Neely points to the trial judge's comments at a hearing; however, the record reflects that Neely made no objection to these comments. To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. TEX.R.APP. P. 33.1(a). Failure to object and obtain an adverse ruling waives review of an error on appeal. Therefore, we overrule Neely's sixth issue.

### E. Did the disciplinary process deny the attorney his rights to constitutional due process?

■■■ In his ninth and final issue, Neely complains that the disciplinary proceeding did not afford him the opportunity to develop the record in a meaningful way to support his constitutional due-process claims. Neely also complains that by granting summary judgment in the matter, the trial court refused to allow a jury trial. As a result, Neely claims, the disciplinary process effectively deprived him of constitutional due process.

As to this issue, Neely has failed to provide argument, analysis, citations to the record, or legal authority. In his only citation to the record, Neely refers this court to fourteen pages in the clerk's record for his argument and authority on this issue. The authority to which he cites pertains to an argument in support of his pleadings filed in a federal action against the Commission, the State Bar of Texas, the trial judge in this matter, and Ploch, among others. By failing to brief this issue, Neely has waived it. *See* TEX.R.APP. P. 38.1(h); *WorldPeace v. Comm'n for Lawyer Discipline,* 183 S.W.3d 451, 460 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (providing that failure to offer argument, citations to the record, or authority waives complaint on review); *San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 338 (Tex.App.-Houston [14 Dist.] 2005, no pet.) (holding that, even though courts interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of the parties' argument); *Curtis,* 20 S.W.3d at 231 n. 2 (providing that a reviewing court is under no obligation to independently search the record for evidence supporting an appellant's position). Neely's ninth issue is overruled.

Having overruled each of Neely's appellate issues, we affirm the trial court's judgment.